

# UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

**DARRELL NEWTON AKA MUHAMMAD**
C/O
Darrell Muhammad
1619 Independence Ave. SE
Washington, District of Columbia
20003
(202) 544-4707

Plaintiff.

VS

UNITED STATES OF AMERICA

Defendant(s)

---

**JOSEPH J. GROAN,** President, CEO
PAINE WEBBER, GROUP, INC..
100 Federal,
Boston, MA 02110

---

**JOHN FERGUSON,** President and
CEO
CORRECTIONS CORPORATION OF
AMERICA, INC.
10 Burton Hills Boulevard
Nashville, Tennessee 37215

---

**HENRY M. PAULSON**
AGENT FOR INTERNATIONAL
MONETARY FUND, INTERNAL
REVENUE SERVICE, DISTRICT
DIRECTOR, SPECIAL FUNCTIONS
OFFICER and PRINCIPAL, GOVERNOR
FOR INTERNATIONAL MONETARY
FUND AKA SECRETARY OF THE
TREASURY,
1500 Pennsylvania Avenue, N.W.
Washington, D.C. 20002

**FILED**

SEP 1 2 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

CASE NUMBER   1:06CV01583

JUDGE: Richard J. Leon

DECK TYPE: Contract

DATE STAMP: 09/12/2006

1

C/O UNITED STATES ATTORNEY
GENERAL
**ALBERTO GONZALES,**
950 Pennsylvania Avenue N.W. 20530
Washington, D.C. 20530

**KENNETH L. WAINSTEIN**-Assistant
United States Attorney
555 4th Street, NW.
Washington, D.C. 20001

**PATRICK COSTELLO,** United States
Prosecutor
555 4th Street, NW.
Washington, D.C. 20001

**STEVEN POLIN,** Public Defender
3034 Tennyson Street, N.W.
Washington, D.C. 20015

# VERIFIED COMPLAINT

**NOW COMES** the Plaintiff, **Darrell Muhammad** sues, Defendant(s), et al on

statutory grounds, and on constitutional grounds as provided by the application of

foreign law under U.S.C. 28, the Judicial code for the "private" Claim for money

damages under USC, 28, chapter 97, sec. 1602-1611 are suit for damages

resulting from commercial activity. Plaintiff is applying the "commercial exception

to all Defendant(s) who are party under this code. Damages resulting from

statutory violations are "criminal" where additional remedy and relief is

requested.

Plaintiff is bringing suit against federal officials in their "individual" and "private"

capacity, not their official capacity. The actions of Defendant(s), i.e., federal

officials are brought about for injuries to Plaintiff during the performance

commercial activities of the foreign state, and not the *"de jure"* activities which are the constitutionally mandated functions of government. The actions of these federal officials are outside of the official functions, and therefore are *"ultra vires"*. Defendant(s) lose their shield of sovereign immunity, *Williamson vs. U.S. Department of Agriculture, 815 F.2d. 369, ACLU Foundation V. Barr, 952 F.2d. 457, 293 U.S. App. DC 101, (CA DC 1991).*

U.S. Code-TITLE 28, Judiciary and Judicial Procedure, PART IV: Jurisdiction and Venue, Chapter 85: District Courts; Jurisdiction, Section 1331. Federal Question

Revised: 06-01-2003 The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

Plaintiff appearing specially, supplemental rule Federal Rules of Civil Procedure (SFRCP) Rule (E)8 Restricted Appearance in the original in the alternative, as a matter of right and privilege and enter his claim SFRCP (B)3(b), to alleged rights under maritime liens and notice of incarceration, indictments, and forced peonage. Defendant(s), et al in the first instance absent their verified oath and solemn affirmation of complaint pursuant to Supplemental Rules (B)(1), (c)(2) & (E)(4)(f) or in the alternative F.R.Civ.P.4(e), thereby denying Plaintiff's procedural due process.

Plaintiff has the right to bring this case to a competent court of jurisdiction to seek remedy for injuries caused by the *"commercial activity"* of foreign corporations that is a party of interest. Under § 1602. Findings and declaration of purpose of the (FSIA). Under international law, states are not immune from the jurisdiction of foreign courts insofar as their commercial activities are concerned, and their commercial property may be levied upon for the satisfaction of judgments rendered against them in connection with their commercial activities. Claims of foreign states to immunity should henceforth be decided by courts of the United States and of the States in conformity with the principles set forth in this chapter.

# TABLE OF AUTHORITIES

## CASES

### SUPREME COURT CASES

1.    FindLaw: Case Num. 961037
http://laws.findlaw.com/us/000/96-1037.html
Highlight Hits

2.    FindLaw: Case Num. 961037
http://laws.findlaw.com/us/523/751.html
Highlight Hits

3.    FindLaw: MORSE v. REPUBLICAN PARTY OF VIRGINIA, ___ U.S. ___
(1996)
http://laws.findlaw.com/us/517/186.html
Highlight Hits

4.    FindLaw: GUTIERREZ DE MARTINEZ v. LAMAGNO, ___ U.S. ___ (1995)
http://laws.findlaw.com/us/515/417.html
Highlight Hits

5.    FindLaw: SAUDI ARABIA v. NELSON, 507 U.S. 349 (1993)
http://laws.findlaw.com/us/507/349.html
Highlight Hits

6.    FindLaw: AMERICAN NAT'L RED CROSS v. S.G., 505 U.S. 247 (1992)
http://laws.findlaw.com/us/505/247.html
Highlight Hits

7.    FindLaw: REPUBLIC OF ARGENTINA v. WELTOVER, INC., 504 U.S. 607
(1992)
http://laws.findlaw.com/us/504/607.html
Highlight Hits

8.    FindLaw: DEPARTMENT OF ENERGY v. OHIO, 503 U.S. 607 (1992)
http://laws.findlaw.com/us/503/607.html
Highlight Hits

9.    FindLaw: PENNSYLVANIA v. UNION GAS CO., 491 U.S. 1 (1989)
http://laws.findlaw.com/us/491/1.html
Highlight Hits

10.   FindLaw: FINLEY v. UNITED STATES, 490 U.S. 545 (1989)
http://laws.findlaw.com/us/490/545.html
Highlight Hits

11.   FindLaw: OKLAHOMA TAX COMMISSION v. GRAHAM, 489 U.S. 838
(1989)
http://laws.findlaw.com/us/489/838.html
Highlight Hits

12.   FindLaw: MESA v. CALIFORNIA, 489 U.S. 121 (1989)
http://laws.findlaw.com/us/489/121.html
Highlight Hits

13.   FindLaw: ARGENTINE REPUBLIC v. AMERADA HESS SHIPPING, 488 U.S.
428 (1989)

http://laws.findlaw.com/us/488/428.html
Highlight Hits

14. FindLaw: MERRELL DOW PHARMACEUTICALS INC. v. THOMPSON, 478
U.S. 804 (1986)
http://laws.findlaw.com/us/478/804.html
Highlight Hits

15. FindLaw: FRANCHISE TAX BD. v. LABORERS VACATION TRUST, 463
U.S. 1 (1983)
http://laws.findlaw.com/us/463/1.html
Highlight Hits

16. FindLaw: FIRST NAT. CITY BANK v. BANCO PARA EL COMERCIO, 462
U.S. 611 (1983)
http://laws.findlaw.com/us/462/611.html
Highlight Hits

17. **FindLaw: VERLINDEN B. V. v. CENTRAL BANK OF NIGERIA, 461 U.S.
480 (1983)** Codified, *into Federal Law under the FSIA*

## Circuit Court Cases

1. FindLaw: ROBINSON v GOV'T OF MALAYSIA,
http://laws.findlaw.com/circs/2nd/007730conv2.html

2. FindLaw: ROBINSON v GOV'T OF MALAYSIA,
http://laws.findlaw.com/circs/2nd/007730con.html

3.  FindLaw Case
http://laws.findlaw.com/circs/8th/012782p.pdf

4. FindLaw: BILLY L. JACKSON, ET AL. v RESOLUTION GGF OY, ET AL.,
http://laws.findlaw.com/circs/7th/972044.html

5.  FindLaw Case
http://laws.findlaw.com/circs/2nd/037173p.pdf

6. FindLaw: BRENNTAG INTERNATIONAL v NORDDEUTSCHE LANDES,
http://laws.findlaw.com/circs/2nd/987992.html

7. FindLaw: SAUDI ARABIAN AIR v TAMIMI,
http://laws.findlaw.com/circs/4th/981423p.html

8. FindLaw: FOXHALL REALTY LAW v TELECOMMUNICATIONS,
http://laws.findlaw.com/circs/2nd/979147.html

9.  FindLaw Case
http://laws.findlaw.com/circs/11th/0310849p.pdf

10.  FindLaw Case
http://laws.findlaw.com/circs/2nd/037861p.pdf

11.  FindLaw: CLARENDON, LTD. v STATE BANK OF SAURASHTRA
http://laws.findlaw.com/circs/2nd/957145.html

12.  FindLaw: USCA10 Opinion 01-1436.wpd
http://laws.findlaw.com/circs/10th/011436.html

13.  FindLaw Case
http://laws.findlaw.com/circs/9th/0055084.html

14. FindLaw: CHAIR KING, ET AL v HOUSTON CELL., ET AL,
http://laws.findlaw.com/circs/5th/9620100cv0.html

15. FindLaw Case

http://laws.findlaw.com/circs/5th/9550161cv0.html
16. FindLaw: BARTELS v ALABAMA COMMERCIAL COLLEGE
   http://laws.findlaw.com/circs/11th/948607opa.html
17. FindLaw: UNITED STATES COURT OF APPEALS FOR THE FEDERAL
   CIRCUIT
   http://laws.findlaw.com/circs/Fed/061032p.pdf
18. FindLaw: HWANG GEUM JOO v JAPAN,
   http://laws.findlaw.com/circs/DC/017169a.html
19. FindLaw Case
   http://laws.findlaw.com/circs/9th/0015124.html
20. FindLaw: DRESSER IND INC v UNDERWRITERS LLOYDS
   http://laws.findlaw.com/circs/3rd/971512p.html
21. FindLaw: 99,
   http://laws.findlaw.com/circs/4th/982091p.html
22. FindLaw: PENOBSCOT NATION v. GEORGIA-PACIFIC CORP
   http://laws.findlaw.com/circs/1st/002265.html
23. FindLaw: 99,
   http://laws.findlaw.com/circs/10th/981112.html
24. FindLaw Case
   http://laws.findlaw.com/circs/DC/037118a.pdf
25. FindLaw: ATKINSON JANE E. v KESTELL, ROBERT J.,
   http://laws.findlaw.com/circs/DC/977181a.html
26. FindLaw: ATKINSON JANE E. v KESTELL, ROBERT J.,
   http://laws.findlaw.com/circs/DC/977181b.html
27. FindLaw Case
   http://laws.findlaw.com/circs/7th/993823.html
28. FindLaw: 99,
   http://laws.findlaw.com/circs/4th/982091pv2.html
29. FindLaw: C:\My Documents\03-3989.519.wpd
   http://laws.findlaw.com/circs/7th/033989p.pdf
30. FindLaw: IN RE: MNSTR PAPANDR,
   http://laws.findlaw.com/circs/DC/977191a.html
31. FindLaw: A:\01-50409.cv1
   http://laws.findlaw.com/circs/5th/0150409p.pdf
32. FindLaw: INTERNATIONAL SCIENCE & TECH. INST. v INACOM
   COMMUNICATIONS
   http://laws.findlaw.com/circs/4th/961142p.html
33. FindLaw: STEPHENS v NATIONAL DISTILLERS AND CHEM. CORP. [93-
   7700]
   http://laws.findlaw.com/circs/2nd/937700.html
34. FindLaw Case
   http://laws.findlaw.com/circs/9th/0136146p.pdf
35. FindLaw: ADLER v NIGERIA No. 9656119
   http://laws.findlaw.com/circs/9th/9656119.html
36. FindLaw: SAMPSON, JACOB v. FEDERAL REPUBLIC
   http://laws.findlaw.com/circs/7th/973555.html
37. FindLaw: MIZUNA, LTD. v CROSSLAND FED. SAV. BANK
   http://laws.findlaw.com/circs/2nd/957242.html

38.  FindLaw Case
     http://laws.findlaw.com/circs/2nd/054260pv1.pdf
39.  FindLaw Case
     http://laws.findlaw.com/circs/2nd/054260p.pdf
40.  FindLaw Case
     http://laws.findlaw.com/circs/4th/032064p.pdf
41.  FindLaw: S:\OPINIONS\NewInternet\9916524.PDF
     http://laws.findlaw.com/circs/9th/9916524p.pdf
42.  FindLaw Case
     http://laws.findlaw.com/circs/3rd/995206.html
43.  FindLaw: ROBINSON v GOV'T OF MALAYSIA,
     http://laws.findlaw.com/circs/2nd/007730v2.html
44.  FindLaw: ROBINSON v GOV'T OF MALAYSIA,
     http://laws.findlaw.com/circs/2nd/007730.html
45.  FindLaw: SALLEN v. CORINTHIANS LICENCIA
     http://laws.findlaw.com/circs/1st/011197.html
46.  FindLaw: A I TRD FIN INC v PETRA INTL BNKG CORP
     http://laws.findlaw.com/circs/DC/947117a.html
47.  FindLaw Case
     http://laws.findlaw.com/circs/5th/9920095cv0.html
48.  FindLaw: UNITED STATES v NORIEGA
     http://laws.findlaw.com/circs/11th/924687man.html
49.  FindLaw: WRLD WDE MNRL v REPUB KAZAKHSTAN,
     http://laws.findlaw.com/circs/DC/007250a.html
50.  FindLaw: EQUAL EMPLOYMENT v THE CHICAGO CLUB
     http://laws.findlaw.com/circs/7th/952323.htm

## JURISDICTIONAL ALLEGATIONS

1. This is an action for money damages.

2. Darrell Muhammad lives in Washington, District of Columbia.

3. All acts necessary or precedent bringing of this action occurred in Washington, D.C.

4. Court has jurisdiction over this matter.

5. Plaintiff alleges the presence of ""commercial activity"" in this action by that Defendant(s),  et.al. caused this cause of action.

## CAUSE OF ACTION

Cause of action arises out of violations under U.S.C 28, Chapter 97, sections 1602-1611 where by the foreign state in pursuit of it's commercial activities,

7

injures an American Citizen of this state while he was conducting his private commercial affairs, and being prosecuted for doing so under the 'color of law' within the legislative statutes reserved for government created 'persons', trusts, political subdivisions, municipalities of STATE, LOCAL, AND FEDERAL GOVERNMENTS, agents, agencies of the UNITED STATES, and certain corporate 14th Amendment [c]itizen subjects, and other fictitious entities under ARTICLE I legislative Courts under their statutory codes of UNITED STATES PRIVATE CORPORATION of limited jurisdiction.

Under the code, the foreign state loses its immunity in the pursuit of "commercial activity" if an injury occurs. As to any claim for relief with respect to which a foreign state is not entitled to immunity under section 1605 or 1607 of this chapter, the foreign state shall be liable in the same manner and to the same extent as a private individual under like circumstances; but a foreign state except for an agency or instrumentality thereof shall not be liable for punitive damages.

## COUNT I

**All parties are in violation of USC TITLE 28, chapter 97, sec. 1603-1611,** and other statutory violations, for injuries upon the Plaintiff incurred by the conspirators acts of unjustly and fraudulently applying color of law charges and the seeking of a conviction to draw him into a profit making scheme to inflict involuntary servitude and peonage to enrich the foreign state by the creation of counterfeit securities, of the Plaintiff's tax exemption, and concealing all activities that extorts money/credit from the Plaintiff much like the banks when the application of a loan is granted, only in this case the creation of money/credit is generated from charges and convictions. The national banking system has created an industry where it rewards the foreign state (and it's interlocking corporations) for the success of

8

charging and obtaining indictments form the Citizens to rob them of their future labor and creating a slave state bent on profits that are generated through the issuing and selling of counterfeit securities.

## COUNT II

### Violation of 18 U.S.C. § 219. Officers and employees acting as agents of foreign principals

All opposing members of the so-called government team are in violation of this act.

(a) Whoever, being a public official, is or acts as an agent of a foreign principal required to register under the Foreign Agents Registration Act of 1938 or a lobbyist required to register under the Lobbying Disclosure Act of 1995 in connection with the representation of a foreign entity, as defined in section 3(6) of that Act shall be fined under this title or imprisoned for not more than two (2) years, or both.

(b) Nothing in this section shall apply to the employment of any agent of a foreign principal as a special Government employee in any case in which the head of the employing agency certifies that such employment is required in the national interest. A copy of any certification under this paragraph shall be forwarded by the head of such agency to the Attorney General who shall cause the same to be filed with the registration statement and other documents filed by such agent, and made available for public inspection in accordance with section 6 of the Foreign Agents Registration Act of 1938, as amended.

(c) For the purpose of this section "public official" means Member of Congress, Delegate, or Resident Commissioner, either before or after he has qualified, or an officer or employee or person acting for or on behalf of the United States, or any department, agency, or branch of Government thereof, including the District of Columbia, in any official function, under or by authority of any such department, agency, or branch of Government.

# COUNT III

**Violation of** 18 U.S.C.A. § 951 **§ 951**. Agents of foreign governments

(a) Whoever, other than a diplomatic or consular officer or attaché, acts in the United States as an agent of a foreign government without prior notification to the Attorney General if required in subsection (b), shall be fined under this title or imprisoned not more than ten (10) years, or both.

(b) The Attorney General shall promulgate rules and regulations establishing requirements for notification.

(c) The Attorney General shall, upon receipt, promptly transmit one copy of each notification statement filed under this section to the Secretary of State for such comment and use as the Secretary of State may determine to be appropriate from the point of view of the foreign relations of the United States. Failure of the Attorney General to do so shall not be a bar to prosecution under this section.

(d) For purposes of this section, the term "agent of a foreign government" means an individual who agrees to operate within the United States subject to the direction or control of a foreign government or official, except that such term does not include--

(1) a duly accredited diplomatic or consular officer of a foreign government, who is so recognized by the Department of State;

(2) any officially and publicly acknowledged and sponsored official or representative of a foreign government;

(3) any officially and publicly acknowledged and sponsored member of the staff of, or employee of, an officer, official, or representative described in paragraph (1) or (2), who is not a United States citizen; or

(4) any person engaged in a legal commercial transaction.

(e) Notwithstanding paragraph (d)(4), any person engaged in a legal commercial transaction shall be considered to be an agent of a foreign government for purposes of this section if--

(1) such person agrees to operate within the United States subject to the direction or control of a foreign government or official.

## COUNT IV

1.    **Violation of Article I, Section 10 of the Bill of Rights**. Impairment of Plaintiff's private contract rights; interfering in the private commercial affairs of Plaintiff, unlawful arrest, investigation, threats, abuse of process, unlawful confinement for 31 months without cause. The Defendant's and their agent's et.al. through the SUPERIOR COURT OF THE DISTRICT OF COLUMBIA issued *"Holding a Criminal Term Grand Jury Sown On July 14, 2004 "*, Case No. F 7826-03, INDICTMENT, in Washington, D.C.  by foreign agents.

2.    On July 23, 2004 D.C. Police detective **Vincent Tucci, John McDonough, James Hitchcock,** and other **John Doe** secret service agents forcibly entered the home of Plaintiff's parents with force, broke down the door without a Lawful and legal search warrant at 11:35 am, and seized private property and documents, and did not come back with the search warrant until 6pm on July 23, 2004. **Vincent Tucci** personally said to Plaintiff, *"If you put any paperwork on me, they will find you in a body bag."*  Statement by Vincent Tucci is a violation under USC TITLE 18 242.

## COUNT V

1.    **Violation  of TITLE 18, Part I, Chapter 13, sec 241** Conspiracy against rights.

If two or more persons conspire to injure, oppress, threaten, or intimidate any person in any State, Territory, Commonwealth, Possession, or District in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States, or because of his having so exercised the same; or If two or more persons go in disguise on the highway, or on the premises of another, with intent to prevent or hinder his free exercise or enjoyment of any right or privilege so secured.

They shall be fined under this title or imprisoned not more than ten (10) years, or both; and if death results from the acts committed in violation of this section or if such acts include kidnapping or an attempt to kidnap, or an attempt to kill, they shall be fined under this title or imprisoned for any term of years or for life, or both, or may be sentenced to death.

2.      Plaintiff's court appointed lawyer **Steven Polin,** violated his fiduciary responsibility to litigate on behalf of the interest of the Plaintiff. He is charged with conspiracy while working with the government's prosecutor to strategize a conviction through lies, deceit, and cohesive actions to compel performance of being subjected to involuntary psychological testing designed to render the Plaintiff indefensible to protect himself for the abuses of the statutory court system. The conflict of interest in the conviction of the Plaintiff by ordering psychological exams to diminish the Plaintiff's ability to offer a sound defense is a violation of USC Title 18, section 242.

## COUNT VI

**1.**     All agents are in **Violation of the Foreign Agent Registration Act**, 18, USC 291, and 18 USC  951. The **Foreign Agents Registration Act** was passed in 1938 in an attempt to limit the influence of German agents in the U.S. "The purpose of (FARA) is to insure that the American public and its law makers know the source of information (propaganda) intended to sway public opinion, policy, and laws," the U.S. Department of Justice (DOJ) states.
[1] (http://www.usdoj.gov/criminal/fara/q_A.htm)

> "An agent of a Foreign principal is any individual or organization which acts at the order, request, or under the direction or control of a foreign principal, or whose activities are directed by a foreign principal who: 1.

12

enggages in political activities, or 2. acts in a public relations capacity for a foreign principal, or 3. solicits or dispenses any thing of value within the United States for a foreign principal, or 4. who represents the interests of a foreign principal before any agency or official of the U.S. government," the (DOJ) states. [2] (*http://www.usdoj.gov/criminal/fara/q_A.htm*)

2.      Government prosecutor **Patrick Costello** is charged with the violation of this act, in addition to spreading propaganda about his representation of *'The Government of the United States of America'* and using that power to make threats of applying "enhancements" of time from charges of private statutory codes under the *"color of law"*, and to frighten the Plaintiff into accepting a plea (contract) of a lesser charges, which is the force of a contract that will harm the Plaintiff, putting him in a disadvantaged position to defend himself in a fair and just trial.

3.      Aggressively pursuing this case with full knowledge that he is representing foreign principles, and he is also aware of the commercial nature and potential profits of gaining a conviction.

## COUNT VII

3.      **Failure to Provide Due Process**. Due Process is a course of legal proceedings according to rules and principles that have been established in a system for jurisprudence for the enforcement and protection of private rights. Due Process derives from early English Common Law. The first concrete expression of the Due Process idea embraced by Anglo-American law appeared in the 39th Article of Magna Arts 1216, *(Encyc. Brit)*

4.      **Failure to follow The Rule of Law**. The Rule of Law is the supremacy of law and embodies three concepts: the absolute predominance of regular law, so that the government has no arbitrary authority over the citizen; the equal subjection of all (including officials) to the ordinary courts; and the fact that the citizen's personal freedoms are

formulated and protected by the ordinary law. (*Oxford Ref. Dictionary of Law*).

5.    **Failure to Prove Jurisdiction**. Challenges to the Jurisdiction of the Court are for (i) "Subject Matter" (ie: the power to deal with the matter to be tried); (ii) "Relationship" (ie: the power to deal with the alleged Defendant); and (iii) "Competence" (ie: the power of the Court to act pursuant to the Laws of the State). (*Britannica*)

> "Once jurisdiction is challenged, it must be proven." *(Jagens v. Lavine, 415 S.Ct.768).* "Jurisdiction can be challenged at any time, even on final determination." (*Basso v. Utah Power & Light Co., 495 2nd 906 at 910*). "Where there is an absence of jurisdiction, all administrative and judicial proceedings are a nullity and confer no right, offer no protection, and afford no justification, and may be rejected upon direct collateral attack." (*Thompson v. Tolmie, 2 Pet. 157, 7 L.Ed. 382; Griffith v. Frazier, 8 Cr. 9, 3L. Ed. 471*).

Orders were directed from the United States Department of Justice by Alberto Gonzales- United States Attorney; and; Kenneth L. Wainstein- Assistant US Attorney.

6.    The Defendant(s), et.al. are guilty of Illegal and unlawful arrest, and incarceration that has damaged  the Plaintiff, Darrell Muhammad and the Newton  Family, their property and rights to property, estate, trust, their good name, and their ability to transfer, sale and freely use same, therefore, this has caused Plaintiff, to be put into a position of involuntary servitude and peonage against his will and the laws of the United States of America, the District of Columbia and the Law of Nations by Defendant(s), et.al.

## COUNT VIII

The Plaintiff and his family have received threatening phone calls from the SECRET SERVICE, et. el., thereby, attests and affirms that upon investigation

and research, the facts stated herein are true and correct to the best of his knowledge and belief.

## FACTUAL ALLEGATIONS

The Defendant(s) ,et al, in the original, and in the alternative filings of the INDICTMENT and the like, have never met the requirements of the *'de jure'* laws of the forum UNITED STATES, the United States of America or the Law of Nations, the Admiralty, in any of their correspondence.

The Plaintiff, Darrell Muhammad and the Newton family, are without remedy to vacate, remove or replevin charges, indictments, convictions, and property respectively; in that, due to lack of procedural due process i.e., a filing of libel before mesne process, as mandated in the District Courts of the U.S. "In Admiralty", by the Defendant(s) et. al., (see Exhibit A copy attached, INDICTMENT and INDICTMENT ORDER dated July 14, 2004. Defendant's only redress in this matter is for the court to review it's charges/claims and make further inquiry into the acts of omission or commission by Defendant(s), et al, by the Judges of this Court pursuant to Title 18 USC §§ 4, 3, and 2.

The Plaintiff affirms and declares based upon information, knowledge and belief that the above is true and correct. All and singular in the premises are true and within the admiralty and maritime venue and jurisdiction of this Honorable Court.

## JURISDICTIONAL ALLEGATIONS

The general immunity provision of the Foreign Sovereign Immunities Act of 1976 (FSIA), 28 U.S.C. §§ 1330, 1602-1611, provides:

Subject to existing international agreements to which the United States is a party at the time of enactment of this Act, a foreign state shall be immune from the jurisdiction of the courts of the United States and of the States except as provided in sections 1605 to 1607 of this chapter.

28 U.S.C. § 1604. The (FSIA) provides the exclusive means by which federal and state courts may obtain subject-matter jurisdiction over civil suits involving foreign states, their agencies, or instrumentalities. *Argentine Republic v. Amerada Hess Shipping Corp., 488 U.S. 428, 443 (1989).* In this interlocutory appeal, we address two issues involving the federal district court's subject-matter jurisdiction under the (FSIA): (1) Whether the (FSIA) prohibits the district court from exercising subject-matter jurisdiction over civil actions against foreign sovereigns based on a pattern of racketeering activity under the Racketeer Influenced and Corrupt Organizations Act of 1970 (RICO), 18 U.S.C. §§ 1961-1968; and, if not, (2) Whether the (FSIA)'s "commercial activity" exception, 28 U.S.C. § 1605(a)(2), applies to the alleged racketeering activity of Defendant(s), AGENTS FOR INTERNATIONAL MONETARY FUND, INTERNAL REVENUE SERVICE, DISTRICT DIRECTOR, SPECIAL PROCEDURES FUNCTION OFFICER and PRINCIPAL, GOVERNOR FOR INTERNATIONAL MONETARY FUND AKA SECRETARY OF THE TREASURY , PAINE WEBBER, CORRECTIONS CORPORATION OF AMERICA, thus obviating their sovereign immunity from suit under the (FSIA)? We answer the first question *"no,"* and the second question, "yes."

The detailed facts giving rise to this action are well stated in the district court's opinion, *Southway v. Central Bank of Nigeria, 994 F. Supp. 1299, 1302-04 (D. Colo. 1998),* and we need not repeat them here. Suffice it to say that this action arose from an alleged scheme in which numerous individuals, including officials of the SECRET SERVICE ordered by the DEPARTMENT OF JUSTICE sought to enforce unilateral contracts on the Plaintiff, through the help of the Washington D.C. Police Department in an arrest that resulted in the impairment of private contract rights of Plaintiff while in the conduct of his private commercial affairs.

Members of the Defendant(s), investigated, harassed, threatened, gained unlawful entry into his parents home, removed personal property, subjecting him to 31 months in jail, indicted and incarcerated him, and is attempting to charge him with 'color of law' code offenses, threaten him with fear of incarceration short of a plea (unilateral contract), and lock him up for 72 years with the threat of

16

"enhancements" of more time mounting to over 144 years if a plea was not crafted between the Plaintiff and the Defendant(s).

(a) A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case

(2) In which the action is based upon a *"commercial activity"* carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a *"commercial activity"* of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a "commercial activity" of the foreign state elsewhere and that act causes a direct effect in the United States.

28 U.S.C. § 1605(a)(2). See *also Verlinden B.V. v. Central Bank of Nigeria, 461 U.S. 480, 493 & n.20 (1983)* (subject-matter jurisdiction under the (FSIA) depends on the existence of a specified exception to the (FSIA). Plaintiff alleged that the real party in interest conspired with one another to deprive Plaintiff of basic Constitutional rights, defraud and commit theft of money from the Plaintiff. . . by means of fraudulent and deceptive schemes, constituting *"commercial activity"* within the meaning of § 1605(a)(2). Plaintiff further alleged that Defendant's scheme violated (RICO), 18 U.S.C. §§ 1961-1962 & 1964. The predicated acts on which Plaintiff based his civil (RICO) claims included, among others, fraud, 18 U.S.C. § 1341; wire fraud, 18 U.S.C. § 1343; and transfer of stolen property, 18 U.S.C. §§ 2314-2315.

Furthermore, because Congress viewed sovereign immunity under the (FSIA) as an affirmative defense to be specially pleaded or waived, rather than a jurisdictional bar to suit, Congress surely viewed commercial acts such as those in which Defendant(s),et al, and the parties of interest engaged, as "indictable" for purposes of a civil (RICO) claim. The legislative history of the (FSIA) reveals that Congress viewed a foreign state's sovereign immunity not as a bar to suit, but as an affirmative defense which the foreign state ultimately has the burden of proving:

[S]ince sovereign immunity is an affirmative defense, which must be specially pleaded; the burden will remain on the foreign state to produce evidence in support of its claim of immunity. Thus, evidence must be produced to establish that a foreign state or one of its subdivisions, agencies or instrumentalities is the defendant in the suit and that the Plaintiff's claim relates to a public act of the foreign state that is, an act not within the exceptions in sections 1605-07.

H.R. 94-1487, at 17 (1976), reprinted in 1976 U.S.C.C.A.N. 6604, 6616. Whether the doctrine of sovereign immunity is jurisdictional or simply an affirmative defense which a foreign state may waive is unimportant to our analysis. See *Verlinden B.V., 461 U.S. at 493 n.20* (notwithstanding the (FSIA's) legislative history, subject-matter jurisdiction under the (FSIA) turns on the existence of an exception in §§ 1605-1607; thus, district court must determine the availability of immunity under the (FSIA) regardless of foreign state's appearance). What is important for the purpose of ascertaining Congressional intent is that Congress viewed sovereign immunity under the (FSIA) as an affirmative defense to be specially pleaded or waived.

Congress' purpose in enacting the (FSIA) was to codify the *"restrictive"* principle of sovereign immunity to restrict the sovereign immunity of foreign *states "to cases involving acts of a foreign state which are sovereign or governmental in nature, as opposed to acts which are either commercial in nature or those which private persons normally perform."* H.R. 94-1487, at 14 (1976), reprinted in 1976 U.S.C.C.A.N. 6604, 6613. Meanwhile, in enacting (RICO), Congress expressly instructed courts to liberally construe its provisions *"to effectuate its remedial purpose."* Pub. L. No. 91-452, § 904(a), 84 Stat. 947 (1970). (RICO's) "'remedial purposes' are nowhere more evident than in the provision of a private action for those injured by racketeering activity," *Sedima, S.P.R.L. v. Imrex Co., Inc., 473 U.S. 479, 498 (1985),* activity which often will be commercial in nature.

Accordingly, Plaintiff hold that the (FSIA) confers subject-matter jurisdiction upon the district court over civil (RICO) claims against foreign states, their agencies, and instrumentalities, provided that the *"commercial activity"* exception, or

18

another exception contained in §§ 1605-07 of the (FSIA) applies. Plaintiff next addresses the applicability of the (FSIA's) "commercial activity" exception to this case.

The (FSIA) defines "*commercial activity*" as "either a regular course of commercial conduct or a particular commercial transaction or act.*" The commercial character of an activity shall be determined by reference to the nature of the course of conduct or particular transaction or act, rather than by reference to its purpose."* 28 U.S.C. § 1603(d). In *Republic of Argentina v. Weltover, 504 U.S. 607 (1992),* the Supreme Court further explained the meaning of "commercial" as used in the (FSIA).

[W]hen a foreign government acts, not as regulator of a market, but in the manner of a private player within it, the foreign sovereign's actions are "*commercial"* within the meaning of the (FSIA). . . . [B]ecause the Act provides that the commercial character of an act is to be determined by reference to its "nature" rather than its "purpose," 28 U.S.C. § 1603(d), the question is not whether the foreign government is acting with a profit motive or instead with the aim of fulfilling uniquely sovereign objectives. Rather, the issue is whether the particular actions that the foreign state performs (whatever the motive behind them) are the type of actions by which a private party engages in *"trade and traffic and commerce."*

Undoubtedly, the purpose of Defendant's alleged scheme was to defraud Plaintiff and steal from him, enforce unilateral contracts, disrupt his private commercial affairs, draw him into a money making scheme with *"color of law"* violations to enrich the foreign state at the expense of the Plaintiff, and to victimize him to the commercial activity of the privately owned prison system. But as § 1603(d) and *Weltover* tell us, the purpose or motive behind Defendant's actions are irrelevant. *See Weltover, 404 U.S. at 617* ([I]t is irrelevant why . . . [the foreign state] participated in the enforcing of private commercial activity in the manner of a private actor; it matters only that it did so.") (emphasis in original). Simply because the activities of a "*foreign state"* are illegal or, as the district court put it,

19

"*nefarious,*" *Southway, 994 F. Supp. at 1309*, does not mean those activities can never be commercial in nature or connected with a "*commercial activity*". *See Cicippio v. Islamic Republic of Iran, 30 F.3d 164, 167-68 (D.C. Cir. 1994)* (suggesting that the illegal character of alleged acts may be irrelevant in judging their commercial character under the (FSIA). Rather, in determining whether the alleged activity of Defendant(s) was commercial, we must focus on the nature of the course of conduct among the parties, and ask whether the activity is one in which commercial actors typically engage.

Accepting the factual allegations of Plaintiff's complaint as true, we easily conclude that Defendant's alleged conduct constituted acts done in connection with a "*commercial activity*" under § 1605(a)(2) of the (FSIA). Given the commercial nature of contractual relationships in the marketplace, many contracts entered into by a "*foreign state*" will fall within the (FSIA)'s "commercial activity" exception precisely because those contracts are of a type in which private actors might enter. This case is no exception. Congress intended the (FSIA's) "commercial activity" exception to encompass a "broad spectrum of endeavor." H.R. 94-1487, at 16, reprinted in 1976 U.S.C.C.A.N. 6604, 6614-15. "*Certainly, if an activity is customarily carried on for profit, its commercial nature could readily be assumed.*"

(a) A foreign state shall not be immune from the jurisdiction of courts of the United States . . . in any case

(5) Not otherwise encompassed in paragraph (2) above [i.e., the "*commercial activity*" exception], in which money damages are sought against a foreign state for . . . damage to or loss of property, occurring in the United States and cause by the tortuous act or omission of that foreign state or of any official or employee of that foreign state while acting within the scope of his office or employment; except this paragraph shall not apply to.

The plain language of § 1605(a)(5) indicates that the tort exception applies to tort actions for money damages "*not otherwise encompassed*" by § 1605(a)(2)'s

exception relating to *"commercial activity"*. Even assuming these claims sound in tort rather than contract, those claims nonetheless are based upon alleged *"commercial activity",* and thus encompassed by § 1605(a)(2). *See Export Group v. Reef Industries, Inc., 54 F.3d 1466, 1477 (9th Cir. 1995)* (holding that § 1605(a)(5)(B)'s restrictions on the (FSIA's) *"non-commercial torts"* exception do not restore sovereign immunity for (FSIA) claims based on a foreign state's *"commercial activities"*).

The legislative history of the (FSIA's) tort exception confirms our understanding of this provision. In enacting § 1605(a)(5), Congress intended to address the problem of *"noncommercial torts,"* "The purpose of section 1605(a)(5) is to permit the victim of state sponsored "commercial activity" or other <u>non-commercial</u> torts to maintain an action against a foreign state to the extent otherwise provided by law." H.R. 94-1487, at 21 (1976), <u>reprinted in</u> 1976 U.S.C.C.A.N. 6604, 6620 (emphasis added). Thus, where § 1605(a)(2)'s *"commercial activity"* exception applies, as in this case, § 1605(a)(5)(B)'s restriction on subsection (a)(5)'s tort exception for torts arising out of misrepresentation and deceit simply has no application. This is so because subsection (a)(5)(B) of § 1605

### DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER ENTITIES WITH A DIRECT FINANCIAL INTEREST IN LITIGATION

1.  **AGENTS FOR INTERNATIONAL MONETARY FUND,**
2.  **INTERNAL REVENUE SERVICE,**
3.  **DISTRICT DIRECTOR,**
4.  **SPECIAL PROCEDURES FUNCTION OFFICER and PRINCIPAL,**
5.  **GOVERNOR FOR INTERNATIONAL MONETARY FUND AKA**
6.  **SECRETARY OF THE TREASURY, Henry M. Paulson**
7.  **C/O UNITED STATES ATTORNEY.**
8.  **PAINE WEBBER GROUP, INC. Joseph J. Grano, Jr.**
9.  **CORRECTIONS CORPORATION OF AMERICA, John Ferguson**

### IDENTITY OF PARTIES IN INTEREST

**DISCLOSURE OF CORPORATE AFFILIATION AND OTHER ENTITIES WITH DIRECTR FINANCIAL INTEREST IN LITIGATION (THE REAL PARTIES OF INTEREST.**

Plaintiff makes the following disclosures:

The **United States of America is not the proper Plaintiff in this action**, although the UNITED STATES will speak on behalf of the real "party in interest" through the Unites States Attorney General, Alberto Gonzales who represents the parties in litigation, and is not apart of the non-commercial government complex or the '*de jure'* functions of government, it is commercial and was never mandated by Congress as a "*de jure"* function of government.

See: *Bank of the United States vs. Planters Bank of Georgia, 6 Led*. (*Wheat 244; U.S. vs. But, 309 U.S. 242)*. The **REAL PARTY IN INEREST** is not the '*de jure'* "United States of America" or "State", but *'The Bank"* and "*THE FUND"*. (22 USCA 286, et seq.) The acts committed under fraud, force and seizure are many times done under 'Letters or Marque and Reprisal" i.e. recapture." (See 31 USCA 5323). Such principles as "Fraud and Justice never dwell together". Wingate's Maxims 680, and 'A right of action cannot arise out of fraud." Broom's Maxims 297, 729.

The "*FUND"* and it's interlocking banking institutions are providing credit/money from the criminal charges of victims of victimless crimes, much like the bank do with the creation  of loans from customers. The person charged with a *"color of law"* crime becomes the source of the funds to generate the financial activity, much like money laundering. The evidence is in the 1099 INTERNAL REVENUE OID and INT certificates, that show who is the creditor and the debtor on the account. The pure profit motive qualifies it and not a *"de jure"* function of government, but "commercial activity" of the foreign state.

2. The U.S. Government is a Foreign Corporation with respect to a state. Secretary of the Treasury is appointed the U.S. Governor of the I.M.F. (International Monetary Fund). This is a foreign principle

3. The Real Party in Interest is foreign to the jurisdiction of the parties in interest, and there is no contract in force between the Plaintiff and the Real Parties In Interest.

4. **Paine Weber Group**, Inc. **Joseph J. Grano, Jr**. has a direct connection and nexus to the foreign state as Chairman of the Homeland Security Advisory Council and one of the Directors of U.S. Joint Forces Command. He is a member of the Board of Directors of Paine Webber and the Pain Webber Incorporated, as well as a member of the Paine Webber Incorporated Executive Committee. He is also a member of the Board of Governors of the National Association of Securities Dealers (NASD) and a member of the NASD's Executive Committee. He is also chairman and CEO of UBS Pain Webber Incorporated, one of the nations largest full-service securities firms.

5. **Corrections Corporation of America**, Inc. is headed by **John Ferguson** They have a rule called the 144 holder. The rule is that they can't sell private investment securities that are not registered. The rule prohibits them from selling the prison bonds. They have to wait 6 months before they can sell a certain quantity of private securities without being registered, selling them as private securities. Basically there are 8 people on the board of directors of CCA (Corrections Corporation of America (www.correctionscorp.com)-Joseph E. Russell, the top holder, and John M Ferguson. Russell owns 64,000 shares of CCA stock is worth about $70 million. Ferguson owns 34,000 shares valued at about $37 million.

After the surety companies indemnify the bonds, which are underwriting them, they do this through an investment banker or the banks themselves do this. They contract  it out to them. They buy up all these shares and turn around and sell them as investment securities. The shares represent the stock which represents the account of CCA. All of this has been funneled through CCA, the Corrections Corporation of America. What they are doing is selling stock in the prison system by selling the prisoners' accounts as securities through the securities exchange.

They are making huge amounts of money off it. They privatize the prisoners' accounts and bring all these investors in and what they are doing is underwriting all these prisoner's accounts (bonds). This is after the surety company guarantees the bonds. Then they are underwritten through an investment bank or banker. Then they are put out on the market and resold to the public. In other words the banks are buying up all the shares and then they resell them as investment securities to the public. The public then buys them as mutual funds or they can buy them as debt instruments, equity instruments.

What they are really doing is they are buying up debt instrument. They are using the fiscal accounting cycle of accrual and they sell the prisoner's 'capital and interest' as it is called in accrual accounting. They resell these to the public because the prisoner did not do full settlement and closure on the account. They sell the prisoner accounts as a commercial dishonor and sell it to the public as a commercial dishonor.

When you go in the courts they always say they are operating under a statute jurisdiction. The Black's Law Dictionary 4th edition says a statute is a bond or obligation of record. That's what all the criminal statutes are........bonds or obligation of record. Go in and read the definition of a recognizance bond and you find that it is a bond or obligation of record. They are selling bonds. They are charging prisoners under a bond; the prisoner signs the bond and the bond becomes the agreement for the payback. This is done when the prisoner signs the final court papers at a sentencing hearing.

6. The parties are: AGENTS FOR THE INTERNATIONAL MONETARY FUND, INTERNAL REVENUE SERVICE, DISTRICT DIRECTOR, SPECIAL PROCEDURES FUNCTION OFFICER and THEIR PRINCIPAL, GOVERNOR OF THE INTERNATIONAL MONETARY FUND AKA SECRETARY OF THE TREASURY, ADMINISTRATIVE COURT JUDGES AND LICENSED ATTORNEYS UNDER THE STATE, and THE INTERNATIONAL BAR ASSOCIATION OF ENGLAND.

7."Parties in Interest" are privately owned by foreign principles, and have direct financial interest in the outcome of litigation due to the fact that their functions are

commercial in nature as defined by the (FSIA), where immunity is waived for such commercial activities, if injury is caused by the exercise of their commercial activities.

8. The Governor of the International Monetary Fund AKA Secretary of the Treasury, **Henry M. Paulson** is not an agent for the USA and it is therefore Intra government as opposed to Inter government.

9. The United States is part owner of the International Monetary Fund (IMF) and holds about 19% to 20% interest of stock in this private corporation. (See: 22 USCA 286 et seq.) The Governor of the Fund cannot be paid by the United States.

10. The government by becoming a Corporator, [See: 22 U.S.C.A. 286(e)] lays down its sovereignty and takes on that of a private citizen. It can exercise no power which is not derived from the corporate charter [See: *The Bank of the United States vs. Planters Bank of Georgia, 6 L. Ed. (9 Wheat) 244, U.S. vs. Burr, 309 U.S. 242]*. The real party of interest is not the '*de jure United States of America*" or "*State,*" but "*The Bank*" and "*The Fund*" [22 U.S.C.A. 286, et seq., C.R.S. 11-60-103]. The acts committed under fraud, force and seizures are many times done under "Letters of Marque and Reprisal" i.e. "recapture" [See: 31 U.S.C.A. 5323]. Such principles as "Fraud and Justice never dwell together" [Wingate's Maxims 680] and "A right of action cannot arise out of fraud" [Broom's Maxims 297,729; Cowper's Reports 343; 5 Scott's New Reports 558; 10 Mass. 276; 38 Fed. 800,].

11.  It appears from the documentary evidence that all members of the opposing side, including the judge, Agents etc., are "Agents of a Foreign Principal" within the meaning and intent of the "Foreign Agents Registration Act of 1938." They are directed and controlled by the corporate "Governor" of "The Fund," also known as "Secretary of Treasury" **Henry M. Paulson.** [See: Public Law 94-564, supra. pg. 5942, U.S. Government Manual 1990/91, pgs. 480 & 481, 26 U.S.C.A. 7701(a) (11), Treasury Delegation Order No. 150-10], and the corporate

"Governor" of "The Bank" [22 U.S.C.A. 286 and 286a], acting as "information-service employees [22 U.S.C.A. 611(c)(ii)], and have been and do now "solicit, collect, disburse or dispense contribution [Tax - pecuniary contribution, Blacks Law Dictionary 5th edition], loans money or other things of value for or in interest of such foreign principal [22 U.S.C.A. 611(c)(ii)], and they entered into agreements with a Foreign Principal pursuant to Treasury Delegation Order No. 91 i.e. the "Agency for International Development" [See: 22 U.S.C.A. 611(c)(2)]. The Internal Revenue Service is also an agency of the International Criminal Police Organization, and solicits and collects information for 150 Foreign Powers [See: U.S.C.A. 263a, The United States Government Manual 1990/91, pg. 385, see also, The Ron Paul Money Book, pg. 250-251]. It should be further noted that Congress has appropriated, transferred, and converted vast sums to Foreign Powers [See: 22 U.S.C.A. 262c(b)] and has entered into numerous Foreign Taxing Treaties (conventions) [See: 22 U.S.C.A. 285g, 22 U.S.C.A. 287j] and other Agreements, which are solicited and collected pursuant to 26 I.R.C. 6103(k)(4). Along with the other documentary evidence submitted herewith, this should absolve any further doubt as to the true character of the party. Such restrictions as "For the general welfare and common defense of the United States" [See: Constitution (1787), Article I, Section 8, Clause 1] apparently aren't applicable, and the fraudulent re-hypothecated debt credit will be merely added to the insolvent nature of the continual "emergency," and the reciprocal socio/economic repercussions laid upon present and future generations.

10. It is worthy of note that each and every Attorney/Representative, Judge or Officer is required to file a "Foreign Agents Registration Statement" pursuant to [22 U.S.C.A. 611(c)(1)(iv) & 612], if representing the interests of a Foreign Principal or Power [See: 22 U.S.C.A. 613, Rabinowitz vs. Kennedy, 376 U.S. 605, 11 L.Ed. 2d 940, 18 U.S.C.A. 219 & 951].

11. Parties In Interest are represented by the UNITED STATES ATTORNEY GENERAL.

The Attorney General and the Sectary of Treasury are not citizens of the United States according to 1994 United States government manual page 390, the Attorney General is a permanent representative to Interpol and the Secretary of the Treasury is the alternate member. Under article 30 of the Interpol Constitution these individuals must expatriate their citizenship. They serve no allegiance to the United States.

## IDENTITY OF PLAINTIFF

12. Plaintiff is acting in his private capacity as a Secured Party Creditor Sovereign Man with unlimited contract rights as supported by the Bill of Rights.

13. Plaintiff, declares his independence of self determination by his Declaration of Independence do hereby Publish and declare his Right to expatriate absolute, his *'res'* (property) in trust to the foreign jurisdiction known as the municipal corporation of the District of Columbia, a democracy, and return to the Republic.

14. Any and all past and present political ties implied by operation of law or otherwise in trust with the democracy is hereby dissolved.

15. Plaintiff has full power to contract, establish commerce as guaranteed by the full 10 Amendments of the Bill of rights to the Constitution of the [u]nited States of America, a Republic.

## AUTHORITY TO FILE BRIEF

(FRCP) 29(a) authorizes Plaintiff to file this brief in the UNITED STATES  DISTRICT COURT FOR THE DISTRICT OF COLUMBIA as a affirmative defense to commercial code charges under *"color of law"* from the United States Attorney General through the arrest by SECRET SERVICE agents and incarceration by THE DISTRICT OF COLUMBIA POLICE DEPARTMENT, THE SUPERIOR COURT OF WASHINGTON DISTRICT OF COLUMBIA claims jurisdiction where jurisdiction is improper. Plaintiff has filed an administrative ORDER to MOVE this case District Court of The United States, District of Columbia.

# NOTICE OF FOREIGN LAW

 Plaintiff gives **NOTICE OF FOREIGN LAW** pursuant to Federal Rules of Civil Procedure 26.1 and that this district court is under legal duty and obligation to take cognizance of the same, and in the matters concerning conflicts of law, the law of the forum United States and the Law of Nations are to govern.

**Under§ 1603. Definitions- For purposes of this chapter** – The Defendant satisfies the definition of a foreign state, It is not the 'de jure' United States of America with congressionally mandated functions; the activities are commercial in nature.

(a) A **"foreign state",** except as used in section 1608 of this title, includes a political subdivision of a foreign state or an agency or instrumentality of a foreign state as defined in subsection (b).

(b) An **"agency or instrumentality of a foreign state"** means any entity --
   (1) which is a separate legal person, corporate or otherwise, and
   (2) which is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof, and
   (3) which is neither a citizen of a State of the United States as defined in section 1332 (c) and (d) of this title, nor created under the laws of any third country.

(c) The **"United States"** includes all territory and waters, continental or insular, subject to the jurisdiction of the United States.

(d) A **"commercial activity"** means either a regular course of commercial conduct or a particular commercial transaction or act. The commercial character of an activity shall be determined by reference to the nature of the course of conduct or particular transaction or act, rather than by reference to its purpose.

28

(e) A ""commercial activity" carried on in the United States by a foreign state" means "commercial activity" carried on by such state and having substantial cont § 1604. Immunity of a foreign state from jurisdiction.

Subject to existing international agreements to which the United States is a party at the time of enactment of this Act a foreign state shall be immune from the jurisdiction of the courts of the United States and of the States except as provided in sections 1605 to 1607 of this chapter.

Plaintiff asserts that the activity that caused injury was the impairment of private contract rights in his execution of his private commercial affairs. The activity of the Plaintiff has no nexus to the *commercial activity* of the Defendant(s). The actions of the Defendant(s) is a declaration of unilateral contracts, to enforce a contract where none exists, or to claim a commercial relationship between the Plaintiff and the Defendant(s). The Defendant's commercial activities exempts them from immunity under the (FSIA), and they can be sued as a private citizen under the act.

## § 1605. General exceptions to the jurisdictional immunity of a foreign state.

(a) A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case --

> (1) in which the foreign state has waived its immunity either explicitly or by implication, notwithstanding any withdrawal of the waiver, which the foreign state may purport to effect except in accordance with the terms of the waiver;
>
> (2) in which the action is based upon a *commercial activity* carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a *commercial activity* of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a *commercial activity* of the foreign state elsewhere and that act causes a direct effect in the United States;

(3) in which rights in property taken in violation of international law are in issue and that property or any property exchanged for such property is present in the United States in connection with a "commercial activity" carried on in the United States by the foreign state; or that property or any property exchanged for such property is owned or operated by an agency or instrumentality of the foreign state and that agency or instrumentality is engaged in a "commercial activity" in the United States;

(4) in which rights in property in the United States acquired by succession or gift or rights in immovable property situated in the United States are in issue;

(5) not otherwise encompassed in paragraph (2) above, in which money damages are sought against a foreign state for personal injury or death, or damage to or loss of property, occurring in the United States and caused by the tortuous act or omission of that foreign state or of any official or employee of that foreign state while acting within the scope of his office or employment; except this paragraph shall not apply to --

(A) any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function regardless of whether the discretion be abused, or

(B) any claim arising out of malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights; or

(6) in which the action is brought, either to enforce an agreement made by the foreign state with or for the benefit of a private party to submit to arbitration all or any differences which have arisen or which may arise between the parties with respect to a defined legal relationship, whether contractual or not, concerning a subject matter capable of settlement by arbitration under the laws of the United States, or to confirm an award made pursuant to such an agreement to arbitrate, if (A) the arbitration takes place or is intended to take place in the United States, (B) the agreement or award is or may be governed by a treaty or other international agreement in force for the United States calling for the

recognition and enforcement of arbitral awards, (C) the underlying claim, save for the agreement to arbitrate, could have been brought in a United States court under this section or section 1607, or (D) paragraph (1) of this subsection is otherwise applicable.

(b) A foreign state shall not be immune from the jurisdiction of the courts of the United States in any case in which a suit in admiralty is brought to enforce a maritime lien against a **vessel** (vague definition i.e. *human body*) or cargo of the foreign state, which maritime lien is based upon a "commercial activity" of the foreign state: Provided, That –

> *Vessel defined under TITLE 18, Part I, Chapter 1, 9 The term "vessel of the United States", as used in this title, means a vessel belonging in whole or in part to the United States, or **any citizen** thereof, or any corporation created by or under the laws of the United States, or of any State, Territory, District, or possession thereof.*

> (1) Notice of the suit is given by delivery of a copy of the summons and of the complaint to the person, or his agent, having possession of the vessel (*human body*) or cargo against which the maritime lien is asserted; and if the vessel (*human body*) or cargo is arrested pursuant to process obtained on behalf of the party bringing the suit, the service of process of arrest shall be deemed to constitute valid delivery of such notice, but the party bringing the suit shall be liable for any damages sustained by the foreign state as a result of the arrest if the party bringing the suit had actual or constructive knowledge that the vessel or cargo of a foreign state was involved; and

> (2) Notice to the foreign state of the commencement of suit as provided in section 1608 of this title is initiated within ten (10) days either of the delivery of notice as provided in paragraph (1) of this subsection or, in the case of a party who was unaware that the vessel or cargo of a foreign state was involved, of the date such party determined the existence of the foreign state's interest.

31

(c) Whenever notice is delivered under subsection (b)(1), the suit to enforce a maritime lien shall thereafter proceed and shall be heard and determined according to the principles of law and rules of practice of suits in 'rem' whenever it appears that, had the vessel been privately owned and possessed, a suit in 'rem' might have been maintained. A decree against the foreign state may include costs of the suit and, if the decree is for a money judgment, interest as ordered by the court, except that the court may not award judgment against the foreign state in an amount greater than the value of the vessel or cargo upon which the maritime lien arose. Such value shall be determined as of the time notice is served under subsection (b)(1). Decrees shall be subject to appeal and revision as provided in other cases of admiralty and maritime jurisdiction. Nothing shall preclude the Plaintiff in any proper case from seeking relief in personam in the same action brought to enforce a maritime lien as provided in this section (d). A foreign state shall not be immune from the jurisdiction of the courts of the United States in any action brought to foreclose a preferred mortgage, as defined in the Ship Mortgage Act, 1920 (46 U.S.C. 911 and following). Such action shall be brought, heard, and determined in accordance with the provisions of that Act and in accordance with the principles of law and rules of practice of suits in rem, whenever it appears that had the vessel been privately owned and possessed a suit in 'rem' might have been maintained.

## § 1606. Extent of liability

As to any claim for relief with respect to which a foreign state is not entitled to immunity under section 1605 or 1607 of this chapter, the foreign state shall be liable in the same manner and to the same extent as a private individual under like circumstances; but a foreign state except for an agency or instrumentality thereof shall not be liable for punitive damages; if, however, in any case wherein death was caused, the law of the place where the action or omission occurred provides, or has been construed to provide, for damages only punitive in nature, the foreign state shall be liable for actual or compensatory damages measured by the pecuniary injuries resulting from such death which were incurred by the persons for whose benefit the action was brought.

## § 1607. Counterclaims

In any action brought by a foreign state, or in which a foreign state intervenes, in a court of the United States or of a State, the foreign state shall not be accorded immunity with respect to any counterclaim --

(a) for which a foreign state would not be entitled to immunity under section 1605 of this chapter had such claim been brought in a separate action against the foreign state; or

(b) arising out of the transaction or occurrence that is the subject matter of the claim of the foreign state; or

(c) to the extent that the counterclaim does not seek relief exceeding in amount or differing in kind from that sought by the foreign state.

## § 1608. Service; time to answer; default

(a) Service in the courts of the United States and of the States shall be made upon a foreign state or political subdivision of a foreign state:

(1) by delivery of a copy of the summons and complaint in accordance with any special arrangement for service between the plaintiff and the foreign state or political subdivision; or

(2) if no special arrangement exists, by delivery of a copy of the summons and complaint in accordance with an applicable international convention on service of judicial documents; or

(3) if service cannot be made under paragraphs (1) or (2), by sending a copy of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the head of the ministry of foreign affairs of the foreign state concerned, or

33

(4) if service cannot be made within thirty (30) days under paragraph (3), by sending two copies of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the Secretary of State in Washington, District of Columbia, to the attention of the Director of Special Consular Services - and the Secretary shall transmit one copy of the papers through diplomatic channels to the foreign state and shall send to the clerk of the court a certified copy of the diplomatic note indicating when the papers were transmitted. As used in this subsection, a "notice of suit" shall mean a notice addressed to a foreign state and in a form prescribed by the Secretary of State by regulation.

(b) Service in the courts of the United States and of the States shall be made upon an agency or instrumentality of a foreign state:

(1) By delivery of a copy of the summons and complaint in accordance with any special arrangement for service between the plaintiff and the agency or instrumentality; or no special arrangement exists, by delivery of a copy of the summons and complaint either to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process in the United States; or in accordance with an applicable international convention on service of judicial documents; or

(3) If service cannot be made under paragraphs (1) or (2), and if reasonably calculated to give actual notice, by delivery of a copy of the summons and complaint, together with a translation of each into the official language of the foreign state --

(A) as directed by an authority of the foreign state or political subdivision in response to a letter rogatory or request or

(B) by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the agency or instrumentality to be served, or

(C) as directed by order of the court consistent with the law of the place where service is to be made.

(c) Service shall be deemed to have been made --

(1) in the case of service under subsection (a)(4), as of the date of transmittal indicated in the certified copy of the diplomatic note; and

(2) in any other case under this section, as of the date of receipt indicated in the certification, signed and returned postal receipt, or other proof of service applicable to the method of service employed.

(d) In any action brought in a court of the United States or of a State, a foreign state, apolitical subdivision thereof, or an agency or instrumentality of a foreign state shall serve an answer or other responsive pleading to the complaint within sixty **(60)** days after service has been made under this section.

(e) No judgment by default shall be entered by a court of the United States or of a State against a foreign state, a political subdivision thereof, or an agency or instrumentality of a foreign state, unless the Plaintiff establishes his claim or right to relief by evidence satisfactory to the court. A copy of any such default judgment shall be sent to the foreign state or political subdivision in the manner prescribed for service in this section.

## § 1609. Immunity from attachment and execution of property of a foreign state

Subject to existing international agreements to which the United States is a party at the time of enactment of this Act the property in the United States of a foreign

state shall be immune from attachment arrest and execution except as provided in sections 1610 and 1611 of this chapter.

## § 1610. Exceptions to the immunity from attachment or execution

(a) The property in the United States of a foreign state, as defined in section 1603(a) of this chapter, used for a *"commercial activity"* in the United States, shall not be immune from attachment in aid of execution, or from execution, upon a judgment entered by a court of the United States or of a State after the effective date of this Act, if --

    (1) the foreign state has waived its immunity from attachment in aid of execution or from execution either explicitly or by implication, notwithstanding any withdrawal of the waiver the foreign state may purport to effect except in accordance with the terms of the waiver, or

    (2) the property is or was used for the "commercial activity" upon which the claim is based, or

    (3) the execution relates to a judgment establishing rights in property which has been taken in violation of international law or which has been exchanged for property taken in violation of international law, or

    (4) the execution relates to a judgment establishing rights in property --

    (A) which is acquired by succession or gift, or

    (B) which is immovable and situated in the United States: Provided, That such property is not used for purposes of maintaining a diplomatic or consular mission or the residence of the Chief of such mission, or

    (5) the property consists of any contractual obligation or any proceeds from such a contractual obligation to indemnify or hold harmless the foreign state or its employees under a policy of automobile or other liability or casualty insurance covering the claim which merged into the judgment, or

36

(6) the judgment is based on an order confirming an arbitral award
rendered against the foreign state, provided that attachment in aid of
execution, or execution, would not be inconsistent with any provision in
the arbitral agreement.

(b) In addition to subsection (a), any property in the United States of an agency
or instrumentality of a foreign state engaged in "commercial activity" in the United
States shall not be immune from attachment in aid of execution, or from
execution, upon a judgment entered by a court of the United States or of a State
after the effective date of this Act, if --

1) the agency or instrumentality has waived its immunity from attachment
in aid of execution or from execution either explicitly or implicitly,
notwithstanding any withdrawal of the waiver the agency or instrumentality
may purport to effect except in accordance with the terms of the waiver, or

(2) the judgment relates to a claim for which the agency or instrumentality
is not immune by virtue of section 1605(a)(2), (3), or (5), or 1605(b) of this
chapter, regardless of whether the property is or was used for the activity
upon which the claim is based.

(c) No attachment or execution referred to in subsections (a) and (b) of this
section shall be permitted until the court has ordered such attachment and
execution after having determined that a reasonable period of time has elapsed
following the entry of judgment and the giving of any notice required under
section 1608(e) of this chapter.

(d) The property of a foreign state, as defined in section 1603(a) of this
chapter, used for a "commercial activity" in the United States, shall not be
immune from attachment prior to the entry of judgment in any action brought in a
court of the United States or of a State, or prior to the elapse of the period of time
provided in subsection (c) of this section, if --

37

(1) the foreign state has explicitly waived its immunity from attachment prior to judgment, notwithstanding any withdrawal of the waiver the foreign state may purport to effect except in accordance with the terms of the waiver, and

(2) the purpose of the attachment is to secure satisfaction of a judgment that has been or may ultimately be entered against the foreign state, and not to obtain jurisdiction.

(e) The vessels of a foreign state shall not be immune from arrest in '*rem*', interlocutory sale, and execution in actions brought to foreclose a preferred mortgage as provided in section 1605(d).

## § 1611. Certain types of property immune from execution

(a) Notwithstanding the provisions of section 1610 of this chapter, the property of those organizations designated by the President as being entitled to enjoy the privileges, exemptions, and immunities provided by the International Organizations Immunities Act shall not be subject to attachment or any other judicial process impeding the disbursement of funds to, or on the order of, a foreign state as the result of an action brought in the courts of the United States or of the States.

(b) Notwithstanding the provisions of section 1610 of this chapter, the property of a foreign state shall be immune from attachment and from execution, if --

(1) the property is that of a foreign central bank or monetary authority held for its own account, unless such bank or authority, or its parent foreign government, has explicitly waived its immunity from attachment in aid of

38

execution, or from execution, notwithstanding any withdrawal of the waiver which the bank, authority or government may purport to effect except in accordance with the terms of the waiver; or

(2) the property is, or is intended to be, used in connection with a military activity and

(A) is of a military character, or

(B) is under the control of a military authority or defense agency.

In the interest of law and justice mandates a hearing of Libel of Review pursuant to the Law of Nations and that said Plaintiff as petitioner and for the protection of his person, property, estate, and trust thereby enters his Complaint of Involuntary Servitude and Peonage due to wanton and malicious acts and threats, duress, coercion, fraud by Defendant(s) in violation of the Laws of the forum united States of America and the Law of Nations pursuant to 18 USC §§ 2, 3, 4, 113(b), 219, 241, 242, 371, 654, 661, 709, 951, 1001, 1028, 1341, 1581, 1621, 1622, 1961, 2111, 2382, 42 USC §1983, 4th, 5th, 7th, 9th, 10th, 13th & 16th Amendments to the Constitution for the United States of America.

2. This is an admiralty/maritime cause of action within the meaning of Federal Rules of Civil Procedure 9(h). Pursuant to 28 USC §§ 1333 and 1337. The courts in the United States have always been open since 1789 to receive admiralty documents, and are still required to do so by authorization of 5: Stat.516, Ch 188, sec: 5 with the enactment date of August 23, 1842, with the authority of the act of September 24, 1789: Chapter:20. "all property taken or detained under any revenue law of the United States . . . shall be deemed in the custody of the law and subject only to the orders and decrees of the courts of the United States having jurisdiction thereof." Emphasis added.

3.      U.S.C Section 1333 Jurisdiction. A case arising under federal law if it is
apparent from the face of the plaintiff's complaint either that the plaintiff's cause
of action was created by federal law; or if the plaintiff's cause of action is based
on state law that the federal law that causes of action is an essential component
of the plaintiff's claim. Even though the cause of action was based in state law,
the federal court did not violate Article III because issues of foreign commerce
are a mater of federal concern. See: _Verlinden vs. Central Bank of Nigeria, 172,
184-88, 192_

4.      Sovereign Immunities Act of 1976 (FSIA) or Act, 28 U.S.C. § 1330(a),
which authorizes federal civil suits against foreign states "**_as to any claim for
relief in personam with respect to which the foreign state is not entitled to
immunity_**" under another section of the (FSIA) or under "any applicable
international agreement." There is further assertions that  Defendant(s) are not
entitled to immunity under the (FSIA s) "_expropriation exception_", §1605(a)(3),
which expressly exempts them from immunity certain cases involving _"rights in
property taken in violation of international law."_

### Section 1330. Actions against foreign states

5.      Plaintiff moves to vacate or dismiss Indictment/case based on, _inter alia_,
the two-part claim that (1) as of 1948, when much of their alleged wrongdoing
took place, they would have enjoyed absolute sovereign immunity from suit in
United States courts, and that (2) nothing in the (FSIA) retroactively divests them
of that immunity. Rejecting this argument, the District Court concluded, among
other things, that the (FSIA)  applies retroactively to pre-1976 actions. The Ninth
Circuit affirmed.

 6.   This Court has long deferred to Executive Branch sovereign immunity
decisions. Until 1952, Executive policy was to request immunity in all actions
against friendly sovereigns. In that year, the State Department began to apply the
"_restrictive theory,_" whereby immunity is recognized with regard to a foreign
state's sovereign or public acts, but not its private acts. Although this change had

little impact on federal courts, which continued to abide by the Department's immunity suggestions, _Verlinden B. V. v. Central Bank of Nigeria, 461 U.S. 480, 487_, the change threw immunity decisions into some disarray: Foreign nations' diplomatic pressure sometimes prompted the Department to file suggestions of immunity in cases in which immunity would not have been available under the restrictive theory; and when foreign nations failed to ask the Department for immunity, the courts had to determine whether immunity existed, so responsibility for such determinations lay with two different branches, _ibid._ To remedy these problems, the (FSIA) codified the restrictive principle and transferred primary responsibility for immunity determinations to the Judicial Branch. The Act grants federal courts jurisdiction over civil actions against foreign states and carves out the expropriation and other exceptions to its general grant of immunity. In any such action, the district court's subject-matter jurisdiction depends on the applicability of one of those exceptions. _Id.,_ at 493—494. Pp. 9—13.

7.   The United States District Court is the mandated district court of the United States having de jure venue to hear a cause of action etc., pursuant to 5 Stat. 516, Chapter 188, § 5 enacted August 23, 1842 pursuant to the Act of September 24, 1789, Chapter 20: and The Constitution for the united States of America, Article III § 2; and, in that the Defendant(s), et al., are directed by the Governor of the Fund (I.M.F.) AKA Secretary of the Treasury, Henry M. Paulson, alien custodian for Prize and Booty, and are foreign agents of their principal The Fund and Bank et al., a fortiori mandates pursuant to the law of the United States of America Title 22 USC Foreign Relations and Intercourse-International Organizations Chapter 7 § 286g. Jurisdiction and venue of actions ". . . any such action at law . . . to which either the Fund or Bank shall be a party shall be deemed to arise under the laws of the United States, and the District Courts of the United States shall have original jurisdiction of any such action." Emphasis added.

8. The United States of America is not a proper party to this action even though the Principal's agents come in its (UNITED STATES) name on the statutory

criminal charges from the DEPARTMENT OF JUSTICE, INTERNAL REVENUE SERVICE, THE SECRET SERVICE, PAINE WEBBER, CORRECTIONS CORPORATION OF AMERICA, and the DISTRICT OF COLUMBIA POLICE DEPARTMENT, under the D.C. Criminal Codes, Section 3221(b); 3222(b)(1), Section 3241, 3242(a); Section 1510; 3241, 3242(c); 722(a)(3)(D); 722(a)(6) (2001 ed); Section 1327(a) (2001 ed.); Section 1328(a)(1); (Second Degree Fraud; uttering: Forgery; Uttering Bad Check; Obstructing Justice; (Harassment); Obstructing Justice (Due Administration of Justice); Bail Reform Act; Offenses Committed During Release) and the like, therefore, the Defendant(s) does not make the United States of America nor UNITED STATES pursuant to F.R.C.P. 17, or in the alternative the United States of America  attempts to make an appearance, the Plaintiff  reserves his rights for disclosure of whose ". . . use or benefit of another [the action or levy in the original shall be brought [for] in the name of the United States . . ."

## OTHER REGULATING AUTHORITIES

Since Plaintiff is in an international jurisdiction, (a set aside, fenced territory) is provided as he goes into the court, and he is entitled to sue the United States, et al in the admiralty as if the United States  of America and the UNITED STATES were a private party. The Defendant(s) are private parties conducting *"commercial activity"* for the benefit of their foreign principles, the Real Parties in Interest.

[2]  Benedicts on Admiralty
[3]  Title: 46: U. S. A. Codes, Appendix, Chapter 20 §§ 742-749,
[4]  Leonard Tesoro, M.D.
[5]  Title: 49: U. S. Codes, Chapter 147 § 14706,


**1.     The Bills of Lading Act .** The Bill of Lading Act includes a criminal

penalty, because the losses suffered to the injured party

**2.     The Foreign Sovereign Immunity Act of 1976, amended 1988. USC 28, Chapter 97, Sections 1602-1611 .**  Codified into federal law by *Verlinden vs. Central Bank of Nigeria, 172, 184-88, 192*

Any foreign sovereigns are liable for damages while doing business in the United States. This provision has application since the foreign sovereign — the judges, clerks, etc. — that operate on the behalf of a 'defacto foreign fiction government'. Officials are liable for the damages that they commit while doing business in the country.

3.    **The Public Vessels Act.** Is another of the admiralty provisions that are helpful to the litigants of the Universal-Legal-Technology. Since the Plaintiff has been damaged by a judge, police officers, prosecutor, court clerk, or other public vessels, the Plaintiff is authorized to sue for the damages in the venue of the admiralty jurisdiction. Again, the Public Vessels Act is a law that specifically waives any immunity of the government.

```
[6]  Title 49 U. S. Codes, Chapter 801 § 80113
[7]  Title 49 U. S. Codes, Chapter 801 §: 80116.
[8]  Title 46 U. S. A. Appendix, Ch. 19-A § 740.
[9]  Title  28  U. S. codes § 1605
[10] Title: 46: U. S. Codes Chapter: 22:§: 781.
```

4.    **The Post Office and the International Postal Union.** The Post Office and Judicial Courts were established *before* the seat of the Government. On Thursday, Sept. 17, 1789 we find written, "Mr. Goodhue, for the committee appointed for the purpose, presented a bill to amend part of the Tonnage act, which was read the first time. The bill sent from the Senate, for the temporary establishment of the Post Office, was read the second and third time, and passed. The bill for establishing the Judicial Courts . . . , for establishing the seat of government . . . " 11[11] Other references to the Post Office support my theory of the founding forefather's views:

```
11]  Gales and Seaton's History [H. of R.], p. 928.
[12] Bouvier, John.  Law Dictionary. Adapted to the
Constitution and Laws of The United States of America
And of the Several States of the American Union, With
References to the Civil and Other Systems of Foreign Law.
```

In the Philadelphia, by the Childs & Peterson. (1856)

[13]  1997 Encyclopedia Britannica

[14]  Collon, Dominique, Editor.
7000  Years of Seals.  In the London, for the Trustees of the
British Museum, by the BRITISH MUSEUM PRESS. 1997. p. 153.

[15]  Universal Postal Union, p. 73.

[16]  Universal Postal Union, p. 74.

[17]  Universal Postal Union, p. 80.

[18]  The backing of paper does not necessarily have to be gold,
it can be anything real at market value like timber,oil,
minerals, metals, land, etc.

[19]  Universal Postal Union, p. 96.

[20]  Universal Postal Union, p. 103.

[21]  Universal Postal Union, p. 186.

[22]  Universal Postal Union, p. 195


**5.    TITLE 28  PART IV CHAPTER 85  Sec. 1333.** Sec. 1333. - Admiralty, maritime and prize cases.

The district courts shall have original jurisdiction, exclusive of the courts of the States, of:

(1) Any civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled.

(2) Any prize brought into the United States and all proceedings for the condemnation of property taken as prize


**6.    TITLE 28 PART IV CHAPTER 85 SEC. 1337.**

Sec. 1337. - Commerce and antitrust regulations; amount in controversy, costs

(a)    The district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies: Provided, however, That the district courts shall have original jurisdiction of an action brought under section 11706 or 14706 of title 49, only if the matter in controversy for each receipt or bill of lading

44

exceeds $10,000, exclusive of interest and costs.

**(b)**     Except when express provision therefore is otherwise made in a statute of the United States, where a plaintiff who files the case under section 11706 or 14706 of title 49, originally in the Federal courts is finally adjudged to be entitled to recover less than the sum or value of $10,000, computed without regard to any setoff or counterclaim to which the defendant may be adjudged to be entitled, and exclusive of any interest and costs, the district court may deny costs to the plaintiff and, in addition, may impose costs on the Plaintiff.

(c)   The district courts shall not have jurisdiction under this section of any matter within the exclusive jurisdiction of the Court of International Trade under chapter 95 of this title be enforced by a proceeding by libel which shall conform as near as may be to proceedings in admiralty.

### 7. **TITLE 42, CHAPTER 21- CIVIL RIGHTS-** Subchapter I Generally

    Sec. 1981.   Equal rights under the law.
           (a)    Statement of equal rights.
           (b)    "make and enforce contracts" defined.
           (c)    Protection against impairment.
    Sec.  1982. Property rights of citizens.
    Sec.  1983  Civil action for deprivation of rights.
    Sec.  1985. Conspiracy to interfere with civil rights
           (2)    Obstructing justice; intimidating party.
           (3)    Depriving persons of rights or privileges.
    Sec.  Prosecution of violating certain laws.

### 8.     **TITLE 42, CHAPTER 21, Subchapter IX-** MISCELLANEOUS PROVISIONS.

Sec. 2000h. Criminal contempt proceedings: trail by jury, criminal practice, penalties, and exceptions.

Sec 2000h-1 Double jeopardy; specific crimes and criminal contempt.

Sec 2000h-2 Intervention by Attorney General; denial of equal protection on account of race, color, religions, sex or national origin

**9.    TITLE 18, CHAPTER 245.**

Police officers, prison guards and other government officials who improperly abuse the rights of individual Americans have long been recognized in federal law as a threat to society as a whole. That's why, immediately after the Civil War, Congress approved Title 18 USC 242 -- a statute making it a crime to deprive any person of their rights "under color of law." Whoever, under color of any law, statute, ordinance, regulation, or custom, willfully subjects any person in any State, Territory, Commonwealth, Possession, or District to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States, or to different punishments, pains, or penalties, on account of such person being an alien, or by reason of his color, or race, than are prescribed for the punishment of citizens, shall be fined under this title or imprisoned not more than one (1) year, or both; and if bodily injury results from the acts committed in violation of this section or if such acts include the use, attempted use, or threatened use of a dangerous weapon, explosives, or fire, shall be fined under this title or imprisoned not more than ten (10) years, or both; and if death results from the acts committed in violation of this section or if such acts include kidnapping or an attempt to kidnap, aggravated sexual abuse, or an attempt to commit aggravated sexual abuse, or an attempt to kill, shall be fined under this title, or imprisoned for any term of years or for life, or both, or may be sentenced to death.

**10.    Title 18, U.S.C., Section 241 Conspiracy Against Rights**

This statute makes it unlawful for two or more persons to conspire to injure, oppress, threaten, or intimidate any person of any state, territory or district in the free exercise or enjoyment of any right or privilege secured to him/her by the Constitution or the laws of the United States, (or because of his/her having exercised the same).

**Secret Service Agents posing as Coldwell Bankers Real Estates Agents.**

**Kojo Oliver**, and **Pete Bondjuk** entered the private residence of Plaintiff's parents home without a warrant and lied about their identity, saying, "they were Real Estate agents", when in fact they were secret service agents.

It further makes it unlawful for two or more persons to go in disguise on the highway or on the premises of another with the intent to prevent or hinder his/her free exercise or enjoyment of any rights so secured.

Punishment varies from a fine or imprisonment of up to ten (10) years, or both; and if death results, or if such acts include kidnapping or an attempt to kidnap, aggravated sexual abuse or an attempt to commit aggravated sexual abuse, or an attempt to kill, shall be fined under this title or imprisoned for any term of years, or for life, or may be sentenced to death.

11.    **Title 18, U.S.C., Section 242 Deprivation of Rights Under Color of Law**

This statute makes it a crime for any person acting under color of law, statute, ordinance, regulation, or custom to willfully deprive or cause to be deprived from any person those rights, privileges, or immunities secured or protected by the Constitution and laws of the U.S.

This law further prohibits a person acting under color of law, statute, ordinance, regulation or custom to willfully subject or cause to be subjected any person to different punishments, pains, or penalties, than those prescribed for punishment of citizens on account of such person being an alien or by reason of his/her color or race.

Acts under *"color of any law"* include acts not only done by federal, state, or local officials within the bounds or limits of their lawful authority, but also acts done without and beyond the bounds of their lawful authority; provided that, in order for unlawful acts of any official to be done under "color of any law," the unlawful acts must be done while such official is purporting or pretending to act in the performance of his/her official duties. This definition includes, in addition to law enforcement officials, individuals such as Mayors, Council persons, Judges, Nursing Home Proprietors, Security Guards, etc., persons who are bound by laws, statutes ordinances, or customs.

Punishment varies from a fine or imprisonment of up to (1) one year, or both, and if bodily injury results or if such acts include the use, attempted use, or threatened use of a dangerous weapon, explosives, or fire shall be fined or imprisoned up to (10) ten years or both, and if death results, or if such acts include kidnapping or an attempt to kidnap, aggravated sexual abuse or an attempt to commit aggravated sexual abuse, or an attempt to kill, shall be fined under this title, or imprisoned for any term of years or for life, or both, or may be sentenced to death.

## NOTICE OF CLASSIFIED INFORMATION

6. Plaintiff give notice that he will demand disclosure and subpoena classified information and will question witnesses about the same, pursuant to the "Classified Information Procedures Act." Public Law 96-456 94 Stat. 2025; will address Interrogatories to Defendant(s), et el, and [b]y the law of nations, the courts of justice of different countries are bound mutually to aid and assist each other for the furtherance of justice . . .", therefore, Plaintiff reserves his right to petition this court to issue Letters Rogatory to foreign and domestic courts for oral examination of parties concerning treaties, compacts, agreements, contracts and the like involving the Defendant et. al., as it applies to any alleged claims as against Plaintiff's property, estate , trust and personally, concerning revenue under the forum United States of America and Law of Nations.

## REQUEST REMEDY

Plaintiff demands the presentment of an injured party (a natural person(s), the contract that is alleged that demands performance from the foreign admirals/principals, and evidence of the national debt to be put on display to the court for verification that a debt exist, but the Plaintiff is not party to it.

Plaintiff demands that the Defendant(s) prove, beyond the shadow of doubt, that the actions from which charges are applied are illegal and are in violation of federal and/or state law. Plaintiff demands the opportunity to demand and receive all evidence and information from the Defendant(s) through the application of discovery to prove his case. Plaintiff demands that he be allowed to complete his private commercial transaction, without third party intervention, (*violation of Article I, section 10 of the Bill of Rights*) so that he may receive his exemption as deserved.

Remedy is sought to identify the commercial activity of the foreign state and to identify the financial value that is placed on the charges applied to the Plaintiff.

The charges have been **"accepted for value for consideration in return and post settlement and closure"** by the Plaintiff, and at this time Plaintiff is requesting the source of the funds that were generated to execute the claim/charge against him. Plaintiff request to be provided a copy of the Federal Tax Form 1099 O.I.D. on each issue to vouch for each claim. Statutory Violations This is Plaintiff's **DEMAND FOR REMEDY**. This demand for this particular issue to be used to identify the payor and Recipient on his account, on the ultimate filing of the Federal Tax Form 1099 O.I.D. on this issue.

Plaintiff request that the Attorney General, Alberto Gonzales, through the INTERNAL REVENUE SERVICE, prepare and file Plaintiff's Federal tax forms 1040/1099 OID, 1099 INT, and 1096 returns that are due. The request further adds, the filing of the liabilities as taxable income to Plaintiff, but to omit filing or posting deductions against the taxable income to Plaintiff, or making adjustments

to dilute the liability on taxable income, as that is a conflict of interest. This request is for return to the source for settlement and closing in exchange treasury direct # 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.

Also, on the 1099 OID and INT, the correction box at the top should be checked and also the Treasury Direct number 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 is to be placed as the Account Number at the bottom of the 1099 OID and INT under Recipient to prevent identity theft, and the account being intercepted and diverted (deferred) if left open.

If Defendant refuses, Defendant will be required to withdraw his claim or produce the tax information requested. All Defendant(s) will be required to submit their personal social security numbers on federal tax form W-9 to the Plaintiff.

If remedy is not given, Defendants will identify themselves as holder-in-due-course of a Federal Tax Liability where they will be required to either file the Federal Tax Form 1099 O.I.D. on this issue for return to the source of settlement and closing in Exchange Treasury Direct # 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 or provide Plaintiff with their tax ID number for the Federal Tax Filing identifying Defendant as Recipient thereon and holder-in-due-course.

Demand the prosecutor read the charges into the record and clarify them.

If charges are not read, the court will be in violation of perpetrating a fraud upon the Plaintiff with alleged violations of the statutes under "*colorable law*" and demand the judge vacate all such un-bonded fraudulent charges.

The 1099 OID, and INT. are proof that a Federal Tax Debt exist, and it proves PRE-PAYMENT using Plaintiff's credit.

When Plaintiff request the federal tax form 1099 O.I.D, Plaintiff will need to identify himself as the sponsor for the credit that funded the treasury bill that was

used to underwrite the true bill indictment. If the Defendants refuses to admit to the amount of the full value of Plaintiff's appearance bond, Plaintiff will demand submission the Internal Revenue Service, through the Attorney General, and read into the record and certified by the Attorney General.

Plaintiff demands a 1099 OID and INT for each violation of each statue under TITLE 26--INTERNAL REVENUE CHAPTER I--INTERNAL REVENUE SERVICE, DEPARTMENT OF THE TREASURY.

Sec. 1.6049-3 Statements to recipients of interest payments and holders of obligations to which there is attributed original issue discount in calendar years before 1983.

(a) Requirement. Every person filing (1) a Form 1099 or 1087 under section 6049(a)(1) and Sec. 1.6049-1 with respect to payments of interest or (2) a Form 1099-OID or 1087-OID with respect to original issue discount includible in gross income, shall furnish to the person whose identifying number is (or should be) shown on the form a written statement showing the information required by paragraph (b) of this section. With respect to interest, no statement is required to be furnished under section 6049(c) and this section to any person if the aggregate of the payments to (or received on behalf of) such person shown on the form would be less than $10. With respect to original issue discount, no statement is required to be furnished under section 6049(c) and this section to any person if the aggregate amount of original issue discount on the statement to such person with respect to the obligation would be less than $10. References in this section to Form 1099 shall be construed to include Form 1099-BCD, except that in applying paragraph (b)(2) of this section no information relating to the person to whom the certificate of deposit was originally issued shall be disclosed to another person to whom the payment of interest is made.

(b) Form of statement--(1) In general. The written statement required to be furnished to a person under paragraph (a) of this section shall show:

(i) With respect to payments of interest (as defined in Sec. 1.6049-2) aggregating $10 or more to any person during a calendar year before 1983:

(a) The aggregate amount of payments shown on the Form 1099 or 1087 as having been made to (or received on behalf of) such person and a legend stating that such amount is being reported to the Internal Revenue Service, and

(b) The name and address of the person filing the form, and

(ii) With respect to original issue discount (as defined in Sec. 1.6049-2) which would aggregate $10 or more on the statement to the holder during a calendar year after 1970 and prior to calendar year 1983:

(a) The aggregate amount or original issue discount includible by (or on behalf of) such person with respect to the obligation, as shown on Form 1099-OID or Form 1087-OID for such calendar year (determined by applying the rules of paragraph (a)(1)(ii) of Sec. 1.6049-1 for purposes of completing either form),

(b) All other items shown on such Form 1099-OID or Form 1087-OID for such calendar year (so determined), and

(c) A legend stating that such amount and such items are being reported to the Internal Revenue Service.

(2) Special rule. The requirements of this section for the furnishing of a statement to any person, including the legend requirement of this paragraph, may be met by the furnishing to such person of a copy of the Form 1099, 1099-OID, 1087, or 1087-OID filed pursuant to Sec. 1.6049-1, or a reasonable facsimile thereof, in respect of such person. However, in the case of Form 1087-OID or 1099-OID, a copy of the instructions must also be sent to such person. A statement shall be considered to be furnished to a person within the meaning

[[Page 294]]

of this section if it is mailed to such person at his last known address.

(c) Time for furnishing statements--(1) In general--(i) Payment of interest. Each statement required by this section to be furnished to any person for a calendar year for the payment of interest shall be furnished to such person after November 30 of the year and on or before January 31 of the following year, but no statement may be furnished before the final interest payment for the calendar year has been paid.

However, the statement may be furnished at any time after April 30 if it is furnished with the final interest payment for the calendar year.

(ii) Original issue discount. (a) Except as otherwise provided in this subdivision (ii), each statement required by this section to be furnished to any person for a calendar year for original issue discount shall be furnished to such person after December 31 of the year and on or before January 31 of the following year.

(b) The time for furnishing each statement required by this section to be furnished to any person for the calendar year 1971 for original issue discount in respect of obligations to which paragraph (e) of Sec. 1.1232-3A applies (relating to deposits in banks and other similar financial institutions) is extended to March 15, 1972.

(c) The time for furnishing each statement required by this section to be furnished by a nominee to any person for the calendar year 1971 for original issue discount is extended to February 28, 1972.

(2) Extensions of time. For good cause shown upon written application of the person required to furnish statements under this section, the district director may grant an extension of time not exceeding 30 days in which to furnish such statements. The application shall be addressed to the district director with whom the income tax returns of the applicant are filed and shall contain a full recital of the reasons for requesting the extension to aid the district director in determining the period of the extension, if any, which will be granted.
Such a request in the form of a letter to the district director signed by the applicant will suffice as an application. The application shall be filed on or before the date prescribed in subparagraph (1) of this paragraph for furnishing the statements required by this section.

(3) Last day for furnishing statement. For provisions relating to the time for performance of an act when the last day prescribed for performance falls on Saturday, Sunday, or a legal holiday, see Sec. 301.7503-1 of this chapter (Regulations on Procedure and Administration).

(d) Penalty. For provisions relating to the penalty provided for failure to furnish a statement under this section see Sec. 301.6678-1 of this chapter (Regulations on Procedure and Administration).

(Secs. 6049 (a), (b), and (d) and 7805 of the Internal Revenue Code of 1954 (96 Stat. 592, 594; 26 U.S.C. 6049 (a), (b), and (d); 68A Stat.

917, 26 U.S.C. 7805), and in sec. 309 of the Tax Equity and Fiscal
Responsibility Act of 1982 (96 Stat. 591)

[T.D. 6628, 27 FR 12801, Dec. 28, 1962, as amended by T.D. 7154, 36 FR
25011, Dec. 28, 1971; 37 FR 527, Jan. 13, 1972; T.D. 7584, 44 FR 1104,
Jan. 4, 1979; T.D. 7624, 44 FR 31012, May 30, 1979; T.D. 7881, 48 FR
12968, Mar. 28, 1983]

Plaintiff also demand the submission of financial statements from all
Defendant(s) to prove the conflict of interest of the relationships between the
commercial complex and their employee status and the fiduciary obligations the
Citizens of America and the United States Constitution which they promised up
uphold.

## CONCLUSION PRAYER AND RELIEF

In **all** criminal prosecutions, the accused **shall** enjoy the right to a speedy and
public trial, by an impartial jury of the State and district wherein the crime shall
have been committed, which district shall have been previously ascertained by
law, and to be informed of the nature and cause of the accusation; to be
confronted with the witnesses against him; to have compulsory process for
obtaining witnesses in his favor, and to have the Assistance of Counsel for his
defense. [emphasis added].
The 6th Amendment makes this "right" to know the nature and cause mandatory.
Why are they (judges and prosecutors) so bent on concealing this mandatory
information?  The Supreme Court has held:

> The constitutional right to be informed of the nature and cause of
> the accusation entitles the defendant to insist that the indictment
> apprise him of the crime charged with such reasonable certainty
> that he can make his defense and protect himself after judgment
> against another prosecution on the same charge. *United States v.
> Cruikshank*, 92 U.S. 542, 544, 558 (1876); *United States v.
> Simmons*, 96 U.S. 360 (1878); *Bartell v. United States*, 227 U.S.
> 427 (1913); *Burton v. United States*, 202 U.S. 344 (1906).

There are no common law offenses against the United States. Only those acts,
which Congress has forbidden, with penalties for disobedience of its command,

are crimes. *United States v. Hudson & Goodwin*, 11 U.S. (7th Cr.) 32 (1812); *United States v. Coolidge*, 14 U.S. (1 Wheat.) 415 (1816); *United States v. Britton*, 108 U.S. 199, 206 (1883); *United States v. Eaton*, 144 U.S. 677, 687 (1892).

Actions to recover penalties imposed by act of Congress generally but not invariably have been held not to be criminal prosecutions. *Oceanic Navigation Co. v. Stranaham, 214 U.S. 320 (1909); Hepner v. United States, 213 U.S. 103 (1909); United States v. Regan, 232 U.S. 37 (1914).*

Contempt proceedings, which were at one time not considered to be criminal prosecutions, are no longer within that category. Compare *In re Debs, 158 U.S. 564 (1895), with Bloom v. Illinois, 391 U.S. 194 (1968).*

**Wherefore,** Plaintiff pray that this District Court is mandated pursuant to the Supplemental Rules of Admiralty and the Law of Nations, Law and Justice supra, for an inquiry into all the matters herein sworn to by Plaintiff with a report of its findings pursuant to Libel of Review. If upon its findings and conclusions, pursuant to Law, Justice and Fact, it is found that Plaintiff's claims are well founded, then in the interest of Law and Justice: that,

17. The court Notify Defendant(s), et al., to return all properties (monies) taken from Plaintiff's, as was taken during an illegal and unlawful forced entry and search of home, and the like;

18. Remove all INDICTMENTS, POLICE REPORTS, any other documents that was born out of this action from the public record; or any other storage of information electronic or otherwise.

19. If Defendant(s), et al, refuse such notice by the court, that Plaintiff's, Libel of Review, Complaint et al., be filed, Admiralty process issue, and that Defendant(s), et al., be cited to appear and answer the allegations of this libel;

that said suit shall be reviewed, in the original, in the alternative, that said alleged INDICTMENTS, CHARGES, and the like be removed and dismissed along with the return of all property of Plaintiff; and that Plaintiff, may have such other further relief as he may be entitled to review.

20. Plaintiff request the application of punitive damages as required by the code U.S.C. 28, Chapter 97, sections 1605,1606,1607 of the Foreign Sovereign Immunities Act of 1976.

## CLAIM

A. I,: Darrell –Ramon :Muhammad©™, herein give Claim against Kenneth L. Wainstein, Assistant US Attorney, Alberto Gonzales US Attorney, Nancy McKinney Director Criminal Division/clerk of the court and all John Doe prosecuting Attorneys agents for the United States of America and the District of Columbia Superior Court of a federal corporation.

B. My address, for purposes of this claim, is:

   c/o 1619 Independence Avenue S.E.
   Washington, District of Columbia [20003]

C. Government certified checks are to be sent to the above address in my behalf.

D. This claim is based on the imposition of involuntary servitude by officers/agents of the United States of America.

E. The names of the officers causing the injuries are:
   Alberto Gonzales-United States Attorney
   Kenneth L. Wainstein-Assistant United States Attorney
   All John Doe Prosecutors including Patrick Costello
   Nancy McKinney-Branch Chief Criminal Division/Clerks Office
   Steven G. Polin, Attorney at Law

F. Jurisdiction for this claim rest in the United States District Court for the District of Columbia.

# CLAIM

Reference; Civil Action/Complaint #

Affidavit of :Darrell –Ramon: Muhammad©™

In re Criminal action/Complaint # F7826-03 and compulsory counterclaim proven in U.S. District of Columbia Superior Court.

I, :Darrell –Ramon :Muhammad©™, the undersigned, do swear, declare and depose: that I am competent to state the matters set forth herein, that I have personal knowledge of the facts stated herein, that all the facts stated herein are true, correct and certain, admissible as evidence, and if called upon as a witness I will testify to their veracity.

That on the date and time stated within the Criminal/Action and complaint # F7826-03, the above named U.S. Attorney, Assistant U.S. Attorney, Prosecuting Attorney and the Clerk of the Court failed to exhibit and prove subject matter jurisdiction to give the Court subject matter jurisdiction over the Affiant, et al, as Affiant, et al is not an officer of the United States, A State, or any other political subdivision or an officer of a corporation not under contract or otherwise with the United States of America, a federal corporation, AKA the United States and/or THE UNITED STATES.

That I was exercising my rights pursuant to the 1st thru 9th Amendments to conclude a monetary transaction upon agreement of the parties as a matter of right, under necessity. That my private rights and business does not make me subject to the federal statutes.

COMES NOW the Accused; DARRELL NEWTON, a.k.a. MUHAMMAD, to enter upon the record of this honorable court, a compulsory claim for damages for the imposition of failure to show liability to the statute, failure to state a claim, malicious prosecution, violation of Due Process of Law resulting in subjecting the Accused into involuntary servitude and this Claim is made pursuant to Rule 13 of the FRCP or otherwise.

That said injuries are severe to the rights, titles and interest of the Affiant and said damages herein are appropriate and approximate to the **SUM CERTAIN $20,000,000.00 USD** (Twenty Million Dollars) in money of account/credit.

Further Affiant Saith naught.

I Swear under the penalty of perjury the forgoing is true correct and certain to the best of my knowledge.

:Darrell :Muhammad©™, Secured Party Creditor    seal
Principal, Authorized Representative, Attorney-In-Fact
In behalf of DARRELL NEWTON AKA
MUHAMMAD©, ens legis

## COMPENSATION CLAIMED FOR INJURY SUSTAINED

1.  The prosecution failed to establish Plaintiffs liability to the statue.

2.  The prosecutor failed to state a claim upon which relief can be granted.

3.  The prosecutor failed to establish subject matter jurisdiction.

4.  March 27, 2006 Plaintiff filed an Appearance Brief into the court record.

5.  The prosecutor has violated Plaintiffs Due Process of Law.

6.  The prosecutor is subjecting the Plaintiff to unlawful incarceration.

7.  Plaintiff is not a party to the United States Constitution.

8.  Plaintiff is not a party to the codes of the United States Statutes.

For the imposition of involuntary servitude by the use and threat use of physical and legal coercion by an officer of The United States, a Federal Corporation, I, :Darrell –Ramon :Muhammad©™, do hereby lay claim to damages in the amount of **$20,000,000.00 USD (Twenty Million Dollars) United States Dollars, current funds money of account/credit.**

(see attached Affidavit of Walker F. Todd-Retired Legal Counsel for Federal Reserve Bank)

## CAVEAT

This claim is made to redress the injury of involuntary servitude imposed by the citing public officers as identified above, as public employees acting in the normal scope of their employment and for no other reason.

Executed this ___/ /___ day of September, 2006.

Respectfully Submitted,

Without Prejudice,

:Darrell :Muhammad©™,Secured Party Creditor
Authorized Representative, Attorney-In Fact
In Behalf of DARRELL NEWTON
MUHAMMAD© ENS LEGIS
1619 Independence Ave. SE
Washington, D.C. 20003
202-544-4707


Washington                    )
                              ) ss
District of Columbia          )

   Darrell Muhammad, known by me or Known for Me by proper identification and duly sworn, Certified, and Exemplified, pursuant to applicable state statutes this ___/ /___ day of the ninth month in the year of our Lord, two thousand and six.


Mary J. Vincent
Notary                                          Seal


My commission expires: ___03 - 31 - 08___

# UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

**DARRELL NEWTON AKA MUHAMMAD**
C/O
Darrell Muhammad
1619 Independence Ave. SE
Washington, District of Columbia
20003
(202) 544-4707

Plaintiff.

VS

UNITED STATES OF AMERICA

Defendant(s)

---

**JOSEPH J. GRANO,** President, CEO
PAINE WEBBER, GROUP, INC.
100 Federal,
Boston, MA 02110
phone

---

**JOHN FERGUSON,** President and
CEO
CORRECTIONS CORPORATION OF
AMERICA, INC.
10 Burton Hills Boulevard
Nashville, Tennessee 37215

---

**HENRY M. PAULSON**
AGENT FOR INTERNATIONAL
MONATARY FUND, INTERNAL
REVENUE SERVICE, DISTRICT
DIRECTOR, SPECIAL FUNCTIONS
OFFICER and PRINCIPAL, GOVERNOR
FOR INTERNATIONAL MONETARY
FUND AKA SECRETARY OF THE
TREASURY,

06 1583

**FILED**

SEP 1 2 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

1

1500 Pennsylvania Avenue, N.W.
Washington, D.C. 20002

_____

C/O UNITED STATES ATTORNEY
GENERAL
**ALBERTO GONZALES,**
950 Pennsylvania Avenue N.W. 20530
Washington, D.C. 20002

_____

**KENNETH L. WAINSTEIN**-Assistant
United States Attorney
555 4th Street, NW.
Washington, D.C. 20001

_____

**PATRICK COSTELLO,** United States
Prosecutor
555 4th Street, NW.
Washington, D.C. 20001

_____

**STEVEN POLIN,** Public Defender
3034 Tennyson Street, N.W.
Washington, D.C. 20015

# STATEMENT OF JURISDICTIONAL LAW

## CASE ASSIGNMENT AND NATURE OF SUIT

1.    Jurisdiction is Proper U.S.C. Title 28, Chapter 97, Sections 1602-1611


2.    This is an admiralty/maritime cause of action within the meaning of
Federal Rules of Civil Procedure 9(h). Pursuant to 28 USC §§ 1333 and 1337.
The courts in the United States have always been open since 1789 to receive
admiralty documents, and are still required to do so by authorization of 5:
Stat.516, Ch 188, sec: 5 with the enactment date of August 23, 1842, with the
authority of the act of September 24, 1789: Chapter:20. "all property taken or

2

detained under any revenue law of the United States . . . shall be deemed in the custody of the law and subject only to the orders and decrees of the courts of the United States having jurisdiction thereof." Emphasis added.

3.      U.S.C Section 1333 Jurisdiction. A case arising under federal law if it is apparent from the face of the plaintiff's complaint either that the plaintiff's cause of action was created by federal law; or if the plaintiff's cause of action is based on state law that the federal law that causes of action is an essential component of the plaintiff's claim. Even though the cause of action was based in state law, the federal court did not violate Article III because issues of foreign commerce are a mater of federal concern. See: _Verlinden vs. Central Bank of Nigeria, 172, 184-88, 192_

4.      Jurisdiction encompasses statutory, and on constitutional grounds as provided by the application of foreign law under U.S.C. 28, the Judicial code for the "private" Claim for money damages under USC, 28, chapter 97, sec. 1602-1611 are suit for damages resulting from commercial activity. Plaintiff is applying the "commercial exception to all Defendant(s) who are party under this code. Damages resulting from statutory violations are  "criminal" where additional remedy and relief is requested.

5.      Plaintiff is bringing suit against federal officials in their "individual" and "private" capacity, not their official capacity. The actions of Defendant(s), i.e., federal officials are brought about for injuries to Plaintiff during the performance of commercial activities of the foreign state, and not the "de jure" activities which are the constitutionally mandated functions of government. The actions of these federal officials are out outside of the official I functions, and therefore are "ultra vires". Defendant(s) lose their shield of sovereign immunity, _Williamson vs. U.S. Department of Agriculture, 815 F.2d. 369,ACLU Foundation V. Barr, 952 F.2d. 457, 293 U.S. App. DC 101, (CA DC 1991)._

3

6.      U.S. Code-TITLE 28, Judiciary and Judicial Procedure, PART IV: Jurisdiction and Venue, Chapter 85: District Courts; Jurisdiction, Section 1331. Federal Question.

7.      Revised: 06-01-2003 The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

8.      Plaintiff appearing specially, supplemental rule Federal Rules of Civil Procedure (SFRCP) Rule (E)8 Restricted Appearance in the original in the alternative, as a matter of right and privilege and enter his claim SFRCP (B)3(b), to alleged rights under maritime liens and notice of incarceration, indictments, and forced peonage. Defendant(s), et al in the first instance absent their verified oath and solemn affirmation of complaint pursuant to Supplemental Rules (B)(1), (c)(2) & (E)(4)(f) or in the alternative F.R.Civ.P.4(e), thereby denying Plaintiff's procedural due process.

9.      Plaintiff has the right to bring this case to a competent court of jurisdiction to seek remedy for injuries caused by the "*commercial activity*" of foreign corporations that is a party of interest. Under § 1602. Findings and declaration of purpose of the (FSIA). Under international law, states are not immune from the jurisdiction of foreign courts insofar as their commercial activities are concerned, and their commercial property may be levied upon for the satisfaction of judgments rendered against them in connection with their commercial activities. Claims of foreign states to immunity should henceforth be decided by courts of the United States and of the States in conformity with the principles set forth in this chapter.

10.     This Court has long deferred to Executive Branch sovereign immunity decisions. Until 1952, Executive policy was to request immunity in all actions against friendly sovereigns. In that year, the State Department began to apply the "*restrictive theory,*" whereby immunity is recognized with regard to a foreign

4

state's sovereign or public acts *(de jure)*, but *not its private acts (commercial activity)*. Although this change had little impact on federal courts, which continued to abide by the Department's immunity suggestions, *Verlinden B. V. vs. Central Bank of Nigeria, 461 U.S. 480, 487*, the change threw immunity decisions into some disarray: Foreign nations' diplomatic pressure sometimes prompted the Department to file suggestions of immunity in cases in which immunity would not have been available under the restrictive theory; and when foreign nations failed to ask the Department for immunity, the courts had to determine whether immunity existed, so responsibility for such determinations lay with two different branches, *ibid.* To remedy these problems, the FSIA codified the restrictive principle and transferred primary responsibility for immunity determinations to the Judicial Branch. The Act grants federal courts jurisdiction over civil actions against foreign states and carves out the expropriation and other exceptions to its general grant of immunity. In any such action, the district court's subject-matter jurisdiction depends on the applicability of one of those exceptions. *Id.,* at 493—494. Pp. 9—13.

Respectfully Submitted by,

*Without Prejudice,*

*Darrell Muhammad© Secured Party Creditor*

Secured Party Creditor,
Authorized Representative, Attorney-In Fact
In Behalf of DARRELL NEWTON
MUHAMMAD© ENS LEGIS
1619 Independence Ave. SE
Washington, D.C. 20003
(202) 544-4707