STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF OAKLAND

| | | |
|---|---|---|
| BANK ONE, N.A., | ) | Case No. 03-047448-CZ |
| | ) | |
| Plaintiff, | ) | Hon. E.. Sosnick |
| | ) | |
| v. | ) | AFFIDAVIT OF WALKER F. TODD, |
| | ) | EXPERT WITNESS FOR DEFENDANTS |
| HARSHAVARDHAN DAVE and | ) | |
| PRATIMA DAVE, jointly and severally, | ) | |
| | ) | |
| Defendants. | ) | |

| | |
|---|---|
| Harshavardhan Dave and Pratima H. Dave | Michael C. Hammer (P41705) |
| C/o 5128 Echo Road | Ryan O. Lawlor (P64693) |
| Bloomfield Hills, MI 48302 | Dickinson Wright PLLC |
| Defendants, *in propria persona* | Attorneys for Bank One, N.A. |
| | 500 Woodward Avenue, Suite 4000 |
| | Detroit, Michigan 48226 |
| | (313) 223-3500 |

Now comes the Affiant, Walker F. Todd, a citizen of the United States and the State of Ohio over the age of 21 years, and declares as follows, under penalty of perjury:

1.  That I am familiar with the Promissory Note and Disbursement Request and Authorization, dated November 23, 1999, together sometimes referred to in other documents filed by Defendants in this case as the "alleged agreement" between Defendants and Plaintiff but called the "Note" in this Affidavit. If called as a witness, I would testify as stated herein. I make this Affidavit based on my own personal knowledge of the legal, economic, and historical principles stated herein, except that I have relied entirely on documents provided to me, including the Note, regarding certain facts at issue in this case of which I previously had no direct and personal knowledge. I am making this affidavit based on my experience and expertise as an attorney, economist, research writer, and teacher. I am competent to make the following statements.

1

## PROFESSIONAL BACKGROUND QUALIFICATIONS

2. My qualifications as an expert witness in monetary and banking instruments are as follows. For 20 years, I worked as an attorney and legal officer for the legal departments of the Federal Reserve Banks of New York and Cleveland. Among other things, I was assigned responsibility for questions involving both novel and routine notes, bonds, bankers' acceptances, securities, and other financial instruments in connection with my work for the Reserve Banks' discount windows and parts of the open market trading desk function in New York. In addition, for nine years, I worked as an economic research officer at the Federal Reserve Bank of Cleveland. I became one of the Federal Reserve System's recognized experts on the legal history of central banking and the pledging of notes, bonds, and other financial instruments at the discount window to enable the Federal Reserve to make advances of credit that became or could become money. I also have read extensively treatises on the legal and financial history of money and banking and have published several articles covering all of the subjects just mentioned. I have served as an expert witness in several trials involving banking practices and monetary instruments. A summary biographical sketch and resume including further details of my work experience, readings, publications, and education will be tendered to Defendants and may be made available to the Court and to Plaintiff's counsel upon request.

## **GENERALLY ACCEPTED ACCOUNTING PRINCIPLES**

3. Banks are required to adhere to Generally Accepted Accounting Principles (GAAP). GAAP follows an accounting convention that lies at the heart of the double-entry bookkeeping system called the Matching Principle. This principle works as follows: When a bank accepts bullion, coin, currency, checks, drafts, promissory notes, or any other similar instruments (hereinafter "instruments") from customers and deposits or records the instruments as assets, it must record offsetting liabilities that match the assets that it accepted from customers. The liabilities represent the amounts that the bank owes the customers, funds accepted from customers. In a fractional reserve banking system like the United States banking system, most of the funds advanced to borrowers (assets of the banks) **are created by the banks themselves** and are not merely transferred from one set of depositors to another set of borrowers.

## **RELEVANCE OF SUBTLE DISTINCTIONS ABOUT TYPES OF MONEY**

4. From my study of historical and economic writings on the subject, I conclude that a common misconception about the nature of money unfortunately has been perpetuated in the U.S. monetary and banking systems, especially since the 1930s. In classical economic theory, once economic exchange has moved beyond the barter stage, there are two types of money: money of *exchange* and money of *account.*. For nearly 300 years in both Europe and the United States, confusion about the distinctiveness of these two concepts has led to persistent attempts to treat money of account as the equivalent of money of exchange. In reality, especially in a fractional reserve banking system, a comparatively small amount of money of exchange (e.g., gold, silver, and official currency notes) may support a vastly larger quantity of

business transactions denominated in money of account. The sum of these transactions is the sum of credit extensions in the economy. With the exception of customary stores of value like gold and silver, the monetary base of the economy largely consists of credit instruments. **Against this background, I conclude that the Note, despite some language about "lawful money" explained below, clearly contemplates both disbursement of funds and eventual repayment or settlement in money of account (that is, money of exchange would be welcome but is not required to repay or settle the Note).** The factual basis of this conclusion is the reference in the Disbursement Request and Authorization to repayment of $95,905.16 to Michigan National Bank from the proceeds of the Note. That was an exchange of the credit of Bank One (Plaintiff) for credit apparently and previously extended to Defendants by Michigan National Bank. Also, there is no reason to believe that Plaintiff would refuse a substitution of the credit of another bank or banker as complete payment of the Defendants' repayment obligation under the Note. This is a case about exchanges of money of account (credit), not about exchanges of money of exchange (lawful money or even legal tender).

5. Ironically, the Note explicitly refers to repayment in "lawful money of the United States of America" (*see* "Promise to Pay" clause). Traditionally and legally, Congress defines the phrase "lawful money" for the United States. Lawful money <u>was</u> the form of money of exchange that the federal government (or any state) could be required by statute to receive in payment of taxes or other debts. Traditionally, as defined by Congress, lawful money only included gold, silver, and currency notes redeemable for gold or silver on demand. In a banking law context, lawful money was only those forms of money of exchange (the forms just mentioned, plus U.S. bonds and notes redeemable for gold) that constituted the reserves of a national bank prior to 1913

4

(date of creation of the Federal Reserve Banks). *See,* Lawful Money, *Webster's New International Dictionary* (2d ed. 1950). In light of these facts, I conclude that Plaintiff and Defendants exchanged reciprocal credits involving money of account and not money of exchange; no lawful money was or probably ever would be disbursed by either side in the covered transactions. This conclusion also is consistent with the bookkeeping entries that underlie the loan account in dispute in the present case. Moreover, it is puzzling why Plaintiff would retain the archaic language, "lawful money of the United States of America," in its otherwise modern-seeming Note. It is possible that this language is merely a legacy from the pre-1933 era. Modern credit agreements might include repayment language such as, "The repayment obligation under this agreement shall continue until payment is received *in fully and finally collected funds*," which avoids the entire question of "In what form of money **or credit** is the repayment obligation due?"

6. *Legal tender,* a related concept but one that is economically inferior to *lawful money* because it allows payment in instruments that cannot be redeemed for gold or silver on demand, has been the form of money of exchange commonly used in the United States since 1933, when domestic private gold transactions were suspended (until 1974).. Basically, legal tender is whatever the government says that it is. The most common form of legal tender today is Federal Reserve notes, which by law cannot be redeemed for gold since 1934 or, since 1964, for silver. *See,* 31 U.S.C. Sections 5103, 5118 (b), and 5119 (a).

Note: I question the statement that fed reserve notes cannot be redeemed for silver since 1964. It was Johnson who declared on 15 March 1967 that after 15 June 1967 that Fed Res Notes would not be exchanged for silver and the practice did stop on 15 June

1967 – not 1964. I believe this to be error in the text of the author's affidavit.

7. *Legal tender under the Uniform Commercial Code (U.C.C.)*, Section 1-201 (24) (Official Comment), is a concept that sometimes surfaces in cases of this nature. The referenced Official Comment notes that the definition of *money* is not limited to *legal tender* under the U.C.C. *Money* is defined in Section 1-201 (24) as "a medium of exchange authorized or adopted by a domestic or foreign government and includes a monetary unit of account established by an intergovernmental organization or by agreement between two or more nations." The relevant Official Comment states that "The test adopted is that of sanction of government, whether by authorization before issue or adoption afterward, which recognizes the circulating medium as a part of the official currency of that government. The narrow view that money is limited to legal tender is rejected." Thus, I conclude that the U.C.C. tends to validate the classical theoretical view of money.

## HOW BANKS BEGAN TO LEND THEIR OWN CREDIT INSTEAD OF REAL MONEY

8. In my opinion, the best sources of information on the origins and use of credit as money are in Alfred Marshall, MONEY, CREDIT & COMMERCE 249-251 (1929) and Charles P. Kindleberger, A FINANCIAL HISTORY OF WESTERN EUROPE 50-53 (1984). A synthesis of these sources, as applied to the facts of the present case, is as follows: As commercial banks and discount houses (private bankers) became established in parts of Europe (especially Great Britain) and North America, by the mid-nineteenth century they commonly made loans to borrowers by extending their own credit to the borrowers or, at the borrowers' direction, to third parties. The typical form of such extensions of credit was drafts or bills of exchange drawn upon themselves (claims on the credit of the drawees) instead of disbursements of bullion,

coin, or other forms of money. In transactions with third parties, these drafts and bills came to serve most of the ordinary functions of money. The third parties had to determine for themselves whether such "credit money" had value and, if so, how much. The Federal Reserve Act of 1913 was drafted with this model of the commercial economy in mind and provided at least two mechanisms (the discount window and the open-market trading desk) by which certain types of bankers' credits could be exchanged for Federal Reserve credits, which in turn could be withdrawn in lawful money. Credit at the Federal Reserve eventually became the principal form of monetary reserves of the commercial banking system, especially after the suspension of domestic transactions in gold in 1933. Thus, credit money is not alien to the current official monetary system; it is just rarely used as a device for the creation of Federal Reserve credit that, in turn, in the form of either Federal Reserve notes or banks' deposits at Federal Reserve Banks, functions as money in the current monetary system. In fact, a means by which the Federal Reserve expands the money supply, loosely defined, is to set banks' reserve requirements (currently, usually ten percent of demand liabilities) at levels that would encourage banks to extend new credit to borrowers on their own books that third parties would have to present to the same banks for redemption, thus leading to an expansion of bank-created credit money. In the modern economy, many non-bank providers of credit also extend book credit to their customers without previously setting aside an equivalent amount of monetary reserves (credit card line of credit access checks issued by non-banks are a good example of this type of credit), which also causes an expansion of the aggregate quantity of credit money. The discussion of money taken from Federal Reserve and other modern sources in paragraphs 11 et seq. is consistent with the account of the origins of the use of bank credit as money in this paragraph.

## ADVANCES OF BANK CREDIT AS THE EQUIVALENT OF MONEY

9.  Plaintiff apparently asserts that the Defendants signed a promise to pay, such as a note(s) or credit application (collectively, the "Note"), in exchange for the Plaintiff's advance of funds, credit, or some type of money to or on behalf of Defendant. However, the bookkeeping entries required by application of GAAP and the Federal Reserve's own writings should trigger close scrutiny of Plaintiff's apparent assertions that it lent its funds, credit, or money to or on behalf of Defendants, thereby causing them to owe the Plaintiff $400,000. According to the bookkeeping entries shown or otherwise described to me and application of GAAP, the Defendants allegedly were to tender some form of *money* ("lawful money of the United States of America" is the type of money explicitly called for in the Note), securities or other capital equivalent to money, funds, credit, or something else of value in exchange (money of exchange, loosely defined), collectively referred to herein as "money," to repay what the Plaintiff claims was the *money* lent to the Defendants. **It is not an unreasonable argument to state that Plaintiff apparently changed the economic substance of the transaction from that contemplated in the credit application form, agreement, note(s), or other similar instrument(s) that the Defendants executed, thereby changing the costs and risks to the Defendants.** At most, the Plaintiff extended its own *credit* (money of account), but the Defendants were required to repay in *money* (money of exchange, and *lawful money* at that), **which creates at least the inference of inequality of obligations** on the two sides of the transaction (*money*, including *lawful money*, is to be exchanged for *bank credit*).

8

**MODERN AUTHORITIES ON MONEY**

11. To understand what occurred between Plaintiff and Defendants concerning the alleged loan of *money* or, more accurately, *credit*, it is helpful to review a modern Federal Reserve description of a bank's lending process. *See*, David H. Friedman, MONEY AND BANKING (4th ed. 1984)(apparently already introduced into this case): "The commercial bank lending process is similar to that of a thrift in that the receipt of cash from depositors increases both its assets and its deposit liabilities, which enables it to make additional loans and investments. . . . When a commercial bank makes a business loan, it accepts as an asset the borrower's debt obligation (the promise to repay) and creates a liability on its books in the form of a demand deposit in the amount of the loan." (Consumer loans are funded similarly.) Therefore, the bank's original bookkeeping entry should show an increase in the amount of the asset credited on the asset side of its books and a corresponding increase equal to the value of the asset on the liability side of its books. This would show that the bank received the customer's signed promise to repay as an *asset*, thus *monetizing* the customer's signature and creating on its books a liability in the form of a demand deposit or other demand liability of the bank. The bank then usually would hold this demand deposit in a transaction account on behalf of the customer. Instead of the bank lending its *money* or other assets to the customer, as the customer reasonably might believe from the face of the Note, the bank *created* funds for the customer's transaction account without the customer's permission, authorization, or knowledge and delivered the *credit* on its own books representing those funds to the customer, meanwhile alleging that the bank lent the customer *money*. If Plaintiff's response to this line of argument is to the effect that it acknowledges that it lent credit or issued credit instead of money, one might refer to Thomas P. Fitch, BARRON'S

9

BUSINESS GUIDE DICTIONARY OF BANKING TERMS, "Credit banking," 3. "Bookkeeping entry representing a deposit of funds into an account." But Plaintiff's loan agreement apparently avoids claiming that the bank actually lent the Defendants *money*. They apparently state in the agreement that the Defendants are obligated to repay Plaintiff principal and interest for the "Valuable consideration (money) the bank gave the customer (borrower)." The loan agreement and Note apparently still delete any reference to the bank's receipt of actual cash value from the Defendants and exchange of that receipt for actual cash value that the Plaintiff banker returned.

**12. According to the Federal Reserve Bank of New York, money is anything that has value that banks and people accept as money; money does not have to be issued by the government.** For example, David H. Friedman, I BET YOU THOUGHT. . . . 9, Federal Reserve Bank of New York (4th ed. 1984)(apparently already introduced into this case), explains that banks create new money by depositing IOUs, promissory notes, offset by bank liabilities called checking account balances. Page 5 says, "Money doesn't have to be intrinsically valuable, be issued by government, or be in any special form. . . ."

13. The publication, Anne Marie L. Gonczy, MODERN MONEY MECHANICS 7-33, Federal Reserve Bank of Chicago (rev. ed. June 1992)(apparently already introduced into this case), contains standard bookkeeping entries demonstrating that *money* ordinarily is recorded as a bank *asset*, while a bank *liability* is evidence of *money* that a bank owes. The bookkeeping entries tend to prove that banks accept cash, checks, drafts, and promissory notes/credit agreements (assets) as *money* deposited to create credit or checkbook money that are bank *liabilities*, which shows that, absent any right of setoff, banks owe *money* to persons who deposit *money*.. **Cash (money of**

exchange) is money, and credit or promissory notes (money of account) become money when banks deposit promissory notes with the intent of treating them like deposits of cash. *See*, 12 U.S.C. Section 1813 (*l*)(1) (definition of "deposit" under Federal Deposit Insurance Act). The Plaintiff acts in the capacity of a lending or banking institution, and the newly issued credit or money is similar or equivalent to a promissory note, which may be treated as a deposit of money when received by the lending bank.. Federal Reserve Bank of Dallas publication MONEY AND BANKING, page 11, explains that when banks grant loans, they create new money. The new money is created because a new "loan becomes a deposit, just like a paycheck does." MODERN MONEY MECHANICS, page 6, says, "What they [banks] do when they make loans is to accept promissory notes in exchange for credits to the borrowers' transaction accounts." The next sentence on the same page explains that the banks' assets and liabilities increase by the amount of the loans.

## COMMENTARY AND SUMMARY OF ARGUMENT

14. Plaintiff apparently accepted the Defendants' Note and credit application (money of account) in exchange for its own credit (also money of account) and deposited that credit into an account with the Defendants' names on the account, as well as apparently issuing its own credit for $95,905.16 to Michigan National Bank for the account of the Defendants. One reasonably might argue that the Plaintiff recorded the Note or credit application as a loan (money of account) from the Defendants to the Plaintiff and that the Plaintiff then became the borrower of an equivalent amount of money of account from the Defendants.

**15. The Plaintiff in fact never lent any of its own pre-existing money,**

**credit, or assets as consideration to purchase the Note or credit**

**agreement from the Defendants.** (Robertson Notes: I add that when the bank

does the forgoing, then in that event, there is an utter *__failure of consideration__* for the

"loan contract".) When the Plaintiff deposited the Defendants' $400,000 of newly

issued credit into an account, the Plaintiff created from $360,000 to $400,000 of new

money (the nominal principal amount less up to ten percent or $40,000 of reserves

that the Federal Reserve would require against a demand deposit of this size). The

Plaintiff received $400,000 of credit or money of account from the Defendants as an

asset. GAAP ordinarily would require that the Plaintiff record a liability account,

crediting the Defendants' deposit account, showing that the Plaintiff owes $400,000

of money to the Defendants, just as if the Defendants were to deposit cash or a

payroll check into their account.


16. The following appears to be a disputed fact in this case about which I have

insufficient information on which to form a conclusion: I infer that it is alleged that

Plaintiff refused to lend the Defendants Plaintiff's own money or assets and recorded

a $400,000 loan from the Defendants to the Plaintiff, which arguably was a $400,000

deposit of money of account by the Defendants, and then when the Plaintiff repaid

the Defendants by paying its own credit (money of account) in the amount of

$400,000 to third-party sellers of goods and services for the account of Defendants,

the Defendants were repaid their loan to Plaintiff, and the transaction was complete.

17. I do not have sufficient knowledge of the facts in this case to form a conclusion on

the following disputed points: None of the following material facts are disclosed in

the credit application or Note or were advertised by Plaintiff to prove that the

Defendants are the true lenders and the Plaintiff is the true borrower. **The Plaintiff is trying to use the credit application form or the Note to persuade and deceive the Defendants into believing that the opposite occurred and that the Defendants were the borrower and not the lender.** The following point is undisputed: The Defendants' loan of their credit to Plaintiff, when issued and paid from their deposit or credit account at Plaintiff, became money in the Federal Reserve System (subject to a reduction of up to ten percent for reserve requirements) as the newly issued credit was paid pursuant to written orders, including checks and wire transfers, to sellers of goods and services for the account of Defendants.

## CONCLUSION

18. Based on the foregoing, Plaintiff is using the Defendant's Note for its own purposes, and it remains to be proven whether Plaintiff has incurred any financial loss or actual damages (I do not have sufficient information to form a conclusion on this point). In any case, the inclusion of the "lawful money" language in the repayment clause of the Note is confusing at best and in fact may be misleading in the context described above.

## AFFIRMATION

19. I hereby affirm that I prepared and have read this Affidavit and that I believe the

foregoing statements in this Affidavit to be true. I hereby further affirm that the basis

of these beliefs is either my own direct knowledge of the legal principles and

historical facts involved and with respect to which I hold myself out as an expert or

statements made or documents provided to me by third parties whose veracity I

reasonably assumed.

Further the Affiant sayeth naught.

At Chagrin Falls, Ohio

December 5, 2003

————————————————————
WALKER F. TODD (Ohio bar no. 0064539)
Expert witness for the Defendants
Walker F. Todd, Attorney at Law
1164 Sheerbrook Drive
Chagrin Falls, Ohio 44022
(440) 338-1169, fax (440) 338-1537
e-mail: westodd@adelphia.net

## NOTARY'S VERIFICATION

At Chagrin Falls, Ohio
December 5, 2003

On this day personally came before me the above-named Affiant, who proved his identity
to me my satisfaction, and he acknowledged his signature on this Affidavit in my presence and
stated that he did so with full understanding that he was subject to the penalties of perjury.

————————————————————
Notary Public of the State of Ohio

**Note: Emphasis added.**

# UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

**DARRELL NEWTON AKA MUHAMMAD**
C/O
Darrell Muhammad
1619 Independence Ave. SE
Washington, District of Columbia
20003
(202) 544-4707

Plaintiff.

VS

UNITED STATES OF AMERICA
Defendant(s)

---

**JOSEPH J. GRANO,** President, CEO
PAINE WEBBER, GROUP, INC..
100 Federal,
Boston, MA 02110

---

**JOHN FERGUSON,** President and
CEO
CORRECTIONS CORPORATION OF
AMERICA, INC.
10 Burton Hills Boulevard
Nashville, Tennessee 37215

---

**HENRY M. PAULSON**
AGENT FOR INTERNATIONAL
MONATARY FUND, INTERNAL
REVENUE SERVICE, DISTRICT
DIRECTOR, SPECIAL FUNCTIONS
OFFICER and PRINCIPAL, GOVERNOR
FOR INTERNATIONAL MONETARY
FUND AKA SECRETARY OF THE
TREASURY,
1500 Pennsylvania Avenue, N.W.
Washington, D.C. 20002

06 1583

# FILED

SEP 1 2 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

1

C/O UNITED STATES ATTORNEY
GENERAL
**ALBERTO GONZALES,**
950 Pennsylvania Ave., N.W.
Washington, D.C. 20530

---

**KENNETH L WAINSTEIN** Assistant
United States Attorney
555 4th Street, NW.
Washington, D.C. 20001

---

**PATRICK COSTELLO,** United States
Prosecutor
555 4th Street, NW.
Washington, D.C. 20001

---

STEVEN POLIN, Public Defender
3034 Tennyson Street, N.W.
Washington, D.C. 20015

## AFFIDAVIT OF Darrell Muhammad
## PLAIN STATEMENT OF FACTS

I, **DARRELL NEWTON AKA MUHAMMAD**, upon solemn oath do swear and

depose and state for the record under the penalties of perjury of the United States that

the following are true and correct to the best of my knowledge and belief.

1.      Title 18 section 513 and 514 of the Electronic Funds Transfer Act,

        The bill of exchange is **EXEMPT** from these provisions as a security.

2.      The bill of exchange was not issued under the authority of the

2

3.    Under 1693 (m) of civil liability, an individual may not be liable if the
      act being accused of is not intentional.

4.    Under the Federal Rules of Criminal procedure 12 (b) 6 the
      UNITED STATES has failed to state a claim upon which relief can be
      granted.

5.    House Joint Resolution of June 5, 1933, 48 Stat. 113 (31 USCA 462,
      463), is a valid enactment so far as to it applies to the obligation of the
      UNITED STATES. The resolution declared that provisions requiring
      payment in gold or a particular kind of coin or currency were against public
      policy, and provided that every obligation, heretofore are discharged upon
      payment, dollar for dollar, in any kind of coin or currency which at the time
      of payment is legal tender for public and private debts.

6.    Related points and Authorities including stare decisis supporting the use
      of Bills of Exchange as legal tender and negotiable instruments for
      discharge of private and public debt; 73rd Congressional Session-CHs 48,
      49, *United tobacco Warehouse vs. Wells 490 SW 2nd 152 (1973), UCC
      Section 9333* (a), CCCP 488.10, CCp 153 subparagraph 3, SEC. 1106
      (1), Public law 73-10 as codified in the Henwood case, *Guaranty Trust of
      New York vs. Henwood, et al 59 S CT 847 (1933) FN3 NOS 384, 485*,
      *Hopp vs Chow, California Superior Court-Case No. SVC 39732 (2002)*,
      *US vs. Williams W91-CR-38*(6) Bill of Exchange resulted in Unconditional
      Release by Judge Smith.

7.    The instrument tendered to the bank and negotiated to the United States
      Treasury for settlement is an "Obligation of THE UNITED STATES," under

3

_US vs. Williams W91-CR-38_(6) Bill of Exchange resulted in Unconditional Release by Judge Smith.

7. The instrument tendered to the bank and negotiated to the United States Treasury for settlement is an "Obligation of THE UNITED STATES," under Title 18 USC Section 8, representing as the definition provides a "certificate of indebtedness....drawn upon an unauthorized officer of the United States." (in this case Public law 73-10, HJR-192 of 1933 and Title 31 USC 3123, and 31 USC 5103) and by Treaty (in this case the UNITED STATES CONVENTION OF INTERNATIONAL BILLS OF EXCHANGE AND INTERNATIONAL PROMISSORY NOTES (UNCITRAL) and the Universal Postal Union headquartered in Bern, Switzerland).

8. Senate Document No.: 43, 73rd Congress, 1st Session, stated: "Under the new law the money is issued to the banks in return for Government obligations, bills of exchange, drafts, notes, trade acceptance, and banker's acceptances. The money will be worth 100 cents on the dollar, because it is backed by the credit of the nation. It will represent a mortgage on ALL the homes and other property of all the people in the Nation. " (Which LAWFULLY belongs to these private citizens.) The National Debt is defined as "the mortgages on the wealth and income of the people of a country." (Encyclopedia Britannica, 1959.) Their wealth...their income. The reorganization is evidenced by: the Emergency Banking Act, March 9, 1993; House Joint Resolution 192, June 5, 1933 (public Law 73-10) And the Series of Executive Orders that surround them: 6073- Reopening of Bank's. Embargo on gold Payments and

4

Exports, and Limitations on Foreign Exchange Transactions. March 10, 1933;6102-Forbidding and hoarding of gold coin, gold bullion and gold certificates. April 5, 1933;6111-Transactions in foreign exchange are permitted under Governmental Supervision. April 20, 1933

## 9.    Definitions:

**a.    Bank**. An institution, usually incorporated with power to issue its promissory notes intended to circulate as money (known as bank notes):

to receive the money of others on general deposit, to form a joint fund that shall be used by the institution, for its own benefit; The term "bank" is usually restricted in its application to an incorporated body; while a <u>private individual</u> making it his business to conduct banking operations is generally denominated a <u>"banker."</u>

**b.    Banker.** A private person who keeps a bank; one who is engaged in the business of banking. One who carries on the business of banking by receiving money on deposit with or without interest, by buying and selling <u>bills of exchange</u>, <u>promissory notes</u>, gold or silver coin, bullion, bonds or stock, <u>or other securities</u>, and by <u>loaning money without being incorporated</u>.

**c.    Banker's Note.** A commercial instrument resembling a bank note (a promissory note issued by a bank intended to circulate as money) in every particular except that it is <u>given by a private banker</u> or unincorporated banking institution.

**d.    Bill of Exchange.** A written order from A. to B. directing B. to pay C. a certain sum of money therein named. A "check" differs from a "bill of exchange" in that it is always drawn on a deposit whereas a bill is not.

**e.    Foreign Bill of Exchange.** A bill of exchange drawn in one state or country, upon a <u>foreign state or country.</u>

5

10.   Since the strawman is a corporation created by the state to account for the credit that they are using in  the name of the Plaintiff name, it stands to reason that the strawman represents UNITED STATES and THEIR debt – not the Plaintiff, and his debt, in his private capacity.  Plaintiff is the creditor, and the state or UNITED STATES is the debtor. They owe Plaintiff exemption for using his credit, but since they are bankrupt, there is no "substance money," so Plaintiff, as the creditor, will have to get paid by taking equity, as a setoff.

11.   As one can see from the above definitions, Plaintiff is a "banker" that can "issue **BILLS OF EXCHANGE (BOE)** intended to be circulated as money." Since that is what **ALL** currency is today – your credit – it should not be a stretch for the imagination to think that Plaintiff can **USE HIS OWN CREDIT**! However, Plaintiff is not going to use his credit, which creates more debt – He is going to by using his  **EXEMPTION**.

**Exemption.** Freedom from a general duty or service; immunity from a general burden, or charge, Immunity from service of process or from certain legal obligations, as jury duty.

12. All municipalities and corporations are bankrupt because they have no substance to back up their currency. We, as sovereigns, bailed them out by letting them use OUR PROPERTY as collateral, then they mortgaged it and – Voila! – there was currency. However, we are EXEMPT because they are using my credit to make trillions of dollars a year, and therefore, we are entitled "to take" a portion of their equity in return.

13.   Plaintiff is taking what is already his, and in his possession. Since there is no money, Plaintiff can only "take" equity – goods and services – from the corporations using his credit as they are BANKRUPT! You will be sending a copy of the BOE to Henry Paulson in a "private" capacity as the trustee for the UNITED STATESS. This is done privately because Plaintiff cannot deal with a fiction.

14.    Plaintiff is "foreign" to UNITED STATES and all other corporations, so Plaintiff can use his EXEMPTION as a FOREIGN BILL OF EXCHANGE to pay the balance due in another country (or should we say "corporation" such as UNITED STATES). The "balance" representing the interest that a person owes you when they are using Plaintiff's credit.

15.    Since the strawman is a corporation created by the state to account for the credit that they are using in Plaintiff's name, it stands to reason that the strawman represents UNITED STATES and THEIR debt – not the Plaintiff. Plaintiff is the creditor, and the state or UNITED STATES is the debtor. They owe you interest for using your credit, but since they are bankrupt, there is no "substance money," so you, as the creditor, will have to get paid by taking equity, such as your house and your car as a setoff.

16. **BILL OF EXCHANGE**. An unconditional order in writing, addressed by one person (the drawer/debtor) to another (the drawee/your strawman) and signed by the person giving it, requiring the drawee to pay on demand or at a fixed or determinable future time a specified sum of money to or to the order of a specified person (the payee/Henry Paulson/trustee of U.S. Bankruptcy) or to the bearer. If the bill is payable at a future time the drawee (your strawman) signifies his acceptance (by you as the creditor of both the drawer and drawee AND the payee), which makes him the party primarily liable upon the bill; the drawer and endorsers may also be liable upon a bill. The use of bills of exchange enables one person to transfer to another an enforceable right to a sum of money. A bill of exchange is not only transferable but also negotiable, since if a person without an enforceable right to the money transfers a bill to a holder in due course, the latter obtains a good title to it. Much of the law on bills of exchange is codified by the Bills of Exchange Act 1882 and the Cheques Act 1992.

Dictionary of Law, Oxford University Press © Market House Books Ltd 1997

7

## ADDITIONAL  STATEMENT OF FACTS PURSUANT TO CASE

1. Attorney Steven Polin and Patrick Costello, and all John Doe attorneys are Discharged/fired because of  "conflict of interest" and because I suspect that they have no valid license to practice law, for reference, see; _Barr v. Day, 124 WN 2nd 318, at 328 (1994)_ " *Attorney when fired, is fired without question.* "

2. It is clearly an established principle of law that a corporation being incorporeal and a creature of law must be represented by an attorney.  An attorney representing an artificial entity, such as the (de facto) State, must appear with the corporate charter and law in his hand.  A person acting as an attorney for a foreign principal must be registered pursuant to the Foreign Agents Registration Act (22 USC Section 612 et seq.) See _Victor Rabinowitz et. al. v Robert F. Kennedy 376 US 605._  Failure to file said "Foreign Agents Registration Statement" goes directly to the jurisdiction, and lack of standing to be before the court, and is a felony pursuant to 18 USC pp 219, and 951.  The conflict of law, interest and allegiance is obvious. "NO MAN CAN SERVE TWO MASTERS." See Bible, Luke 16:13, _Jeffert v Pounds, 67 Cal. App. 3d 6, Cinema 5 v Cinerama 528 F 2nd 1384, Easly vs. Brookline Trust 256 SW 2nd 983._ 3 In _US vs. Woody 726 F 2nd 1328 and 751 F 2nd 1008_, it is ruled that a judge who can be influenced by another Department or others, is not an Article III de jure judge.  And in US Ferreira. It *is ruled that a judge who can be influenced by another (not independent), is only a commissioner under a treaty. There is no authority under the constitution for Statutory administrative*

8

courts. 'We (Courts) have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given. The one or the other would be treason to the Constitution." (Emphasis added) <u>Cohen s. Virginia 6 wheat 264.</u> "In all Cases... in which a state shall be a Party...the Supreme Court shall have original Jurisdiction... "Article 3, Section 2, U.S. Constitution, Judges who pretend judicial power without really having it, and when they act for foreign principals, violate 18 USC pp 219 and 951.

3. Any and All contracts with the UNITED STATES, UNITED STATES OF AMERICA, and/or any all subdivisions thereof, in addition to District of Columbia (MOTOR VEHICLES DIV.) are "cancelled" due to "Non Disclosure" avoidable and "Failure of Fair Consideration" (Void). See uniform Commercial Code 1-107. Any alleged Benefit(s) are rejected and waived.

4. Plaintiff DEMANDS that All of his private property that was seized be returned Immediately. Title 42 1982; in order for the city, county, or state to have any jurisdiction over private property, they must have a monetary preparatory or contractual interest in that property before they have any jurisdiction what so ever.

5. Plaintiff DEMANDS from the prosecutor; the name of his/her Insurance carrier, policy number, business license, bond information, the "oath of office" and a copy of your Foreign Agents Registration pursuant to 22 USC 612 to verify you have the authority to collect.

9

6.  *That Article 1, Section 10 of the United States Constitution states NO state shall enter into any Treaty, Allegiance, or Confederation; grant letters of Marquee and Reprisal; Coin money; emit Bills of Credit; Make anything but gold and silver Coin A Tender in Payment of Debts.*

7.  *That Plaintiff REVOKES and RESENDS ALL contracts with the UNITED STATES OF AMERICA and the DISTRICT OF COLUMBIA COURT SYSTEM.*

8.  *That, there is no injured party in this matter, Affiant demands this matter DISMISSED for FAILURE TO STATE A CLAIM FOR WHICH RELIEF CAN BE GRANTED.*

9.  *That, As per CERTIFIED UCC Financing Statement No.: 200400599161 and 200500788973 Affiant/Defendant is "the holder in due course" and owner of Case No.:F7826-03.*

10. *That, Indictment No.: F7826-03 has been "Accepted For Value".*

11. *That, Defendant petitions this court to STRIKE PLAINTIFFS CASE, ACTION, INDICTMENT, CLAIM, COMPLAINT, OR CAUSE FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED, FOR THE FOLLOWING REASON: COURT "RULES OF EVIDENCE" mandate that any and ALL "evidence" before the court, to be evidentiary, must be personally signed: sworn under penalty of perjury" and personal signature NOTARIZED. Upon examination of the "court Record", there appears to be "No evidence" to support PLAINTIFFS CASE, ACTION, INDICTMENT, CLAIM, COMPLAINT, OR CAUSE. The Plaintiff has cited a "Fictitious Party" as "DEFENDANT", which is a "Fraud upon the Court", and "Contempt of Court" (See Blacks Law Dictionary 5th edition.*

12. The prosecution of the above number indictment is barred for lack of subject matter jurisdiction for the following reasons:

1.

**13.    Fraud;**  The Prosecutor failed to establish Affiants liability to the statues, thereby violating Affiants Due Process of Law, and in violating Affiants Due Process, failed to establish subject matter jurisdiction to give it to the court to have subject matter jurisdiction over the subject matter to hear the case.

2.

14.    **Fraud;**  In that the prosecution did not establish subject matter jurisdiction.  March 23, 2006, Affiant filed an Appearance Brief and Conditional Acceptance For Value into the superior court.

15.    **Fraud;**  In that the prosecutor failed to establish Affiants liability to the statute.  Affiant is not a party to the codes of the U.S. statues. Affiant is not a party to the Constitution, then how can Affiant be a defendant?

## UNLAWFUL ACCUSATION

16.    The improper plaintiff by and through Kenneth L. Wainstein – Assistant U.S. Attorney, has brought an action against the Accused in his private capacity; for exercising redress of grievance via non-judicial 'private international administrative notice' of a private matter.  The United States of America has no lawful means, method, or machinery in placed with which to deal with the Accused in that capacity, thus the U.S. Attorney failed to establish "subject matter jurisdiction', and the Accused also denies this court subject matter jurisdiction in that the indictment show no lawful relationship between the parties, therein violating the Plaintiffs right of 'Due Process of Law'.

17.    Kenneth L. Wainstein, signer of this instant indictment, failed to evidence any contract between the United States of America and the Accused to show any contractual debt, obligation, liability, breach, or otherwise of the Accused as

11

placed into the record. Without the statement of injury, the improper plaintiff cannot be made whole or compensated, even if the Accused was so inclined or the court ordered it.

18.    Indictment and other charges grew out of the foreign state's third party intervention of a private relationship with a real estate agent, as Plaintiff issued a Bill OF Exchange to discharge debt. This instrument that was purported to be fraudulent was to have been sent to the bank for authorization for the use of Plaintiff's EXEMPTION for the use of his credit.

19.    Plaintiff asserts, he is the source of the funds, and his request for the IRS 1099 OID and INT will verify that fact.

20.    Pursuant to Rule 8 (FRCP) **I HAVE ACCEPTED THE CHARGES FOR VALUE AND CONSIDERATION IN RETURN FOR POST SETTLEMENT AND CLOSURE, PLEASE USE MY EXEMPTION #578061613 FOR FULL SETTLEMENT AND CLOSURE OF THIS ACCOUNT THAT IS PREPAID EXEMPT FROM LEVY. IMMEDIATELY RELEASE THE BID BOND BACK TO ME, WITH ALL ORDERS OF THE COURT.**

## THE ACCUSED INJURY

21.    Kenneth L. Wainstein is using the bonding capacity of this court to initiate an adversary proceeding, naming the United States of American as Plaintiff, and presenting no evidence of debt, liability, or contract (ab initio) to seek judgment of any kind from or upon the Accused.

22.    This action, by and through Kenneth L. Wainstein is using the threat of physical and legal coercion, and has only alleged an injury, but with no evidence to support the indictment, Here Kenneth L. Wainstein brings this action, to use the consanguinity of the bar association to use the bonding capacity for this court to create, without evidence, an infliction of involuntary servitude  an exercise of a

12

property right over the Accused to the liability of some order or judgment in behalf of the improper plaintiff.

23.    The fact that the Accused has no obligation or liability was determined in *Hale vs. Henkle, 201 U.W. 43 @ pg. 74 (1905);* and Kenneth L. Wainstein's failure to establish subject matter jurisdiction, failed to establish the Accuser's liability to the statutes; is now res judicata and has caused injury to the Accused.

## CONCLUSION

24.    Et sic, the Accused, does not agree nor consent to this action/indictment by and through the above 'agents of the improper plaintiff in failing to state a claim, failure to establish the liability or any legal relationship, violation 'Due Process of Law' and subjecting the Accused to involuntary servitude and as such, the Accused reserves the his right to compulsory counterclaim.

25.    In the event this court, on its own bond, assumes jurisdiction, this is notice to the court that the exercise of that jurisdiction would bring about and inflict a condition of involuntary servitude upon the Accused, and the Accused herein reserves his right to compulsory counter-claim or otherwise.

26.    The undersigned declares that the above instant matter is null and void ab initio and as sovereign, refuses to consent to this action for failure to state a claim.

27,    Accused hereby declares under penalty of perjury the foregoing is true and correct to the best of his knowledge.

28.    Kenneth L. Wainstein failed in issuing the indictment; failed to bring any matter to the court in which the court can take cognizance of.

**WHEREFORE,** Plaintiff Darrell Muhammad, does hereby demand the dismissal, with prejudice, of the above numbered criminal indictment/case.

13

This declaration executed, under necessity, on September ___7th___, 2006, in Washington, District of Columbia.

Respectfully Submitted,

*Without Prejudice,*

*Darrell Muhammad© Secured Party Creditor*

Darrell Muhammad, Authorized Representative
1619 Independence Ave. S.E.
Washington, District of Columbia [ 20003]
202 544 4707

The undersigned Affiant, :Darrell :Muhammad©™, certifies on Affiants commercial liability that Affiant has read the Affidavit and issues the same with intent and understanding of purpose and does solemnly swear, declare and state the statements, allegations, demands and contents contained herein are true, correct, and complete, not misleading, the truth, the whole truth and nothing but the truth.

## NOTICE TO THE PRINCIPAL IS NOTICE TO THE AGENT
## NOTICE TO THE AGENT IS NOTICE TO THE PRINCIPAL

You have thirty (30) days in which you can respond and rebut this Commercial Affidavit, and must do so under penalty of perjury from receipt, UCC 1-204, unless you request in writing an extension of time.  A lack of response or rebuttal means you assent to this Commercial Affidavit. **Expressed or implied, from the beginning, UCC 1-103.**

14

Washington          )
                    ) ss
District of Columbia )

   Darrell Muhammad, known by me or Known for Me by proper identification and duly sworn, Certified, and Exemplified, pursuant to applicable state statutes this __7__ day of the ninth month, in the year of our Lord, two thousand and six.


_Mary J. Vincent_
Notary                                    Seal

My Commission Expires
March 31, 2008

15